(Decided 31st May, 1867.)

Henry Hartle *vs.* Hiram R. Stahl and Wife.

*What is a sufficient Consideration to support a promise— Compromise, how supported—Practice—Presumption.*

A., and her sisters being dissatisfied with the will of their father, and determined to institute legal proceedings to test its validity, and to vacate the same, B., a brother and the executor under the will, in consideration that they would forbear and desist from instituting such legal proceedings, promised to pay to each of them one thousand dollars in addition to the legacies bequeathed them by the will. In consequence of this promise

and undertaking they desisted from taking any legal proceedings, and the will was admitted to probate, and letters testamentary were granted thereon to B. HELD:

That the promise of B. was an undertaking or agreement for the compromise or settlement of a controversy in relation to a matter in which both parties were interested, and was supported by a valid legal consideration; and it was not necessary that it should appear affirmatively that A. and her sisters would have been benefitted by setting the will aside, or that they could have succeeded in the attempt.

To support a compromise, it is sufficient that the parties entering into it thought at the time there was a *bona fide* question between them, though it may eventually turn out there was in fact no such question.

The statement of evidence may be too indefinite to authorize the appellate Court to judge of its pertinency, and the presumption *is* always that the ruling of the inferior Court is correct, unless the contrary appear.

APPEAL from the Circuit Court for Washington County.

This was an action of assumpsit brought by the appellees in May, 1861, against the appellant, to recover, among other things, upon his alleged promise to pay to the appellee, Mary, and her four sisters, children of John Hartle, deceased, the sum of $1,000 each. John Hartle, the father of the appellant and the female appellee, made and executed his will, which was duly admitted to probate by the Orphans' Court of Washington County. He left a widow, three sons, and five daughters. To his sons, Henry and Frederick, he devised and bequeathed all his estate, real and personal, subject to certain charges in favor of his other children and his wife. He appointed the appellant his executor. After the death of the testator, the daughters being dissatisfied with the unequal and unfair disposition of the estate, as made by the will, and contending that he had been unduly influenced thereto, and that his capacity at the time was not sufficient to enable him to resist improper influences, and to make under the circumstances a proper will, had concluded to contest the will, and were about entering a caveat for that purpose, when the appellant, in order to induce the

daughters to forbear instituting the legal proceedings determined on, against the will, undertook and promised to pay to each of them $1,000 in addition to what was given them by their father's will. Relying upon this promise and undertaking on the part of the appellant, the daughters declined to institute any proceeding to test the validity of the will. The declaration contained six counts, five of which were on the special facts, and the sixth a common count for work and labor. The appellant pleaded to the first five counts of the declaration that he never promised and agreed as alleged; the Statute of Limitations and set off. To the sixth count he pleaded, never indebted as alleged; the Statute of Limitations and set off,—the latter defence in several rights and forms. To two of the pleas of set off to the entire declaration, being the fifth and sixth, the plaintiffs demurred, and the Court sustained the demurrer.

*1st Exception:* The plaintiffs having closed their testimony, the defendant offered to prove that the said John Hartle was, at the time of executing said will, of sound and disposing mind, memory and understanding, and fully competent to make a valid deed or contract, and that no undue and improper influence had been exercised upon him, to induce him to execute said will, and that this testimony was offered for the purpose of showing a want of consideration for the promises set forth in the second, third, fourth and fifth counts of the declaration; to the admissibility of this testimony the plaintiffs objected, and the Court (WEISEL, J.) sustained the objection, and would not permit it to go to the jury. To this ruling the defendant excepted.

*2d Exception:* The defendant further offered to prove the value of the real estate left by John Hartle, deceased; and offered the settlement made in the Orphans' Court of Washington County, of his personal estate, as exhibited in the official records of said Court, and for the purpose

of showing the value of his whole estate at the time of his death and as owned by him, and the subject matter of the contract ; to all such testimony the plaintiffs objected and the Court sustained the objection, and excluded it from the jury. To such exclusion the defendant excepted.

3d *Exception :* Upon the whole testimony the plaintiffs asked the following instruction : If the jury find that the plaintiff, Mary Stahl, wife of the said Hiram, was one of several daughters of the late John Hartle, and that said Hartle died leaving a last will and testament, and that the paper writing introduced by the plaintiff in evidence is such will ; and that the same has been admitted to probate, and letters testamentary granted to the defendant; and further find that after the said will was admitted to probate, and letters granted to the defendant as aforesaid, or after said will was admitted to probate and before the granting of letters, the said plaintiff Mary, being then sole and unmarried, she and her said sisters were dissatisfied and discontented with and in regard to the said will, and had therefore determined to take legal proceedings, to test by trial the validity of said will, and to vacate the same; and that the said defendant, in consideration that the plaintiff Mary, then being sole and unmarried, and her said sisters as aforesaid, would forbear and desist from such legal proceedings, he, the defendant, promised the said Mary and each of her said sisters, to pay them respectively the sum of one thousand dollars, in addition to the legacies given them by the said will ; and that in consequence of such promise and undertaking of the defendant, the said plaintiff Mary, and her said sisters, before and since the intermarriage of the said Mary, did desist and have refrained from taking any legal proceedings in the premises, then a right of action or suit hath accrued to the plaintiffs on and in respect of said promises of the defendant, for the recovery of the said sum of one thousand dollars, so as aforesaid promised.

Whereupon the defendant also prayed the Court to instruct the jury as follows, to wit:

1st. That if the jury find that at the time of the making of the promises set forth in the second, third, fourth and fifth counts in the declaration (if they find any such promises were made) the claims and demands of the plaintiffs which are the basis of the consideration upon which said promises are alleged to be made, were wholly without foundation, that then there is no sufficient consideration in law to sustain said promises, and the plaintiffs are not entitled to recover.

2d. That if the jury find that the contract set forth in the declaration was made by the defendant, to pay the sum of $1,000 to each of his sisters, provided his brother Frederick, or his brothers Frederick and Jacob, or either or both of them, would join him in said payment, and not otherwise, then the plaintiffs are not entitled to recover.

Which prayer of the plaintiffs the Court granted, and refused those of the defendant; to the granting of the prayer of the plaintiffs and the rejection of the prayers of the defendant, he excepted, and the verdict and judgment being against him, he appealed.

The cause was argued before BOWIE, C. J., BARTOL and GOLDSBOROUGH, J.

*William T. Hamilton,* for the appellant.

As to the first exception excluding the testimony offered in reference to the mental capacity, &c., of the testator, for the purpose of showing the absence of any consideration for the promise, &c., we had the right to show a total want of consideration, and that the claim made by the parties was utterly without foundation. The parties were notified, had appeared and assented to the probate of the will, and the others failed to appear. The probate of the will fixed the interest of the parties.

The consideration must be shown, its nature and character, whether it be sufficient to sustain a promise, and this can only be done by an examination of all facts having relation to the subject matter. It is alleged in the second, third and fourth counts in the declaration that the ground of dissatisfaction was the mental incapacity of the testator. We had the right to dispel it, and in doing so it reflected also upon the character of the promise, showing that it was purely a gift and not a contract binding in law. *Chitty on Contracts*, 35 ; 1 *Parsons on Contracts*, 366 ; *Jones vs. Ashburnham*, 4 *East.*, 455 ; 1 *Comyn's Digest, Assump.*, 31, *Cond.*, 298 ; *Edwards vs. Baugh*, 11 *Meeson & Welsby*, 641 ; *Wade vs. Simeon*, 2 *Manning, Granger and Scott*, 548 ; *Gist's Adm'r vs. Cockey & Fendall*, 7 *H. & J.*, 135.

As to the second exception for excluding testimony, showing the value of the property left and devised by the testator. This was to show the entire groundlessness of the dissatisfaction which is alleged to have existed, because of the supposed inequalities in the legacies, and had direct reference to the subject matter in controversy. It also would have reflected upon the character of the promise and the testimony establishing it. Here is a proof by parol of a promise, vague, uncertain and indefinite. We had a right to show every thing to which that promise had relation, and upon which it was based or which was the cause of it. The force of the testimony establishing it could be impaired by such evidence ; if, for example, we could show that the condition of the estate was such that if the appellant paid the debts, and paid to each of the girls $1,000 in addition to what they got by the will, he would not only not get anything under the will himself, but he would incur obligations resulting in ruin and utter bankruptcy. For by the evidence in the will of the testator, and it is the only knowledge of the estate we have in the testimony, there were only 203 acres of

Hartle *vs.* Stahl and Wife.

land; this was devised to the appellant and his brother Frederick, they paying together, with all debts, $150 annually to the widow, to Jacob $2,000, and to each of the sisters $1,000, making $5,000 to the latter, and then, according to the promise alleged, the appellant was to pay in addition, to each of the sisters $1,000, making $5,000 more.

And then by certain of the testimony adduced by the appellees, it appears that the promise of the appellant was that he would take Jacob in as a partner in said farm, and that all would pay to each of their sisters $1,000. Would not the introduction of this testimony have rather established in the mind of the jury the latter promises as made by the appellant, than the one relied upon by the appellees, and so barred a recovery in this action against the appellant as declared upon? The only difficulty about the offer of this testimony was, that the appellant undertook to introduce testimony which it was the absolute duty of the appellees to do in order for them to recover. It was for them to show consideration, not for us. It was for them to show assets after the payment of the debts, &c., and to show interest in themselves sufficient to recover. Yet, standing upon the mere naked promise of forbearance as alleged, to take legal proceedings, they not only did not introduce testimony necessary to sustain the promise, but objected to all inquiry as to the condition of the estate of the testator, when proposed by the appellant. But standing upon this promise and conceding for the time that it was sufficient, we proposed by the offer of such to show that it was entirely without foundation and without the slightest consideration in fact and in law.

As to the third exception: this arises upon the refusal of the Court to grant the prayers of the appellant, and upon the granting of the one prayer submitted by the appellees. The Court will observe there are six counts in the

amended declaration, and upon which this cause was tried. The prayers submitted by the appellees only apply to the second count. The first count being upon a promise alleged to have been made by the appellant to the testator, that if he would not change his will he would pay each of his sisters $1,000. There was no proof at all offered, as to this count. The third, fourth and fifth counts were upon a promise alleged to have been made by the appellant to the appellee Mary and her sisters, that if they would let the will be as it was made, and give up all claims that they might have against the testator for work, &c., that then he would give to each $1,000. There was no proof at all as to these.

The sixth count was for work and labor only.

The second is the count to which the testimony more generally applies, and upon which count the appellees founded their proposition of law by their prayer. This prayer is objectionable, because it does not propound the law. It abrogates every idea of a sufficient consideration. The count in the declaration upon which the prayer is based, is insufficient. It ought to have shown an intent in the appellees by proper averments. It was demurable; a prayer could have been offered, that the appellees were not entitled to recover; neither was done, but not being done, the appellees have no right to ask the Court to instruct, that the promise as alleged was good in law and sufficient to entitle the appellees to recover. It is all error. There is not a tittle of testimony in the cause to maintain the consideration of the promise—there is not an averment to bring in issue the consideration, and therefore the prayer could not go beyond the proof and pleadings in the cause, for if the prayer had submitted the *interest* of the appellees in the estate of the testator to sustain the promise, there was no evidence by which the jury could have found for the appellees.

There was no averment of any estate left by the testa-

tor after the payment of his debts and the legacies to the appellee Mary and her sisters, and there was no proof to show it. Unless there was an estate left after such payments, the appellees had no interest whatever about which there could be a controversy. There must be assets after such payment, or there is no *interest* in the appellee Mary in the estate, and if not, there is no consideration for the promise. This is well settled law both in this State and in England. *Busby vs. Conoway*, 8 *Md. Rep.*, 55 ; *Edwards vs. Baugh*, 11 *Mees. & Welsby*, 646 ; *Seaman vs. Seaman*, 12 *Wendell*, 381 ; *Jones vs. Ashburnham*, 4 *East.*, 455 ; *Wade vs. Simeon*, 2 *Man., Gran. & Scott*, 548.

The prayers offered by the appellant should have been granted. The first submits to the jury to find whether the claims and demands of the appellees were without foundation, and if so, that there was no sufficient consideration to sustain the appellant's promise, and for the reasons adduced in the authorities cited. The second submitted to the jury that if from the evidence they found that the contracts alleged were made upon the condition that the appellant's brother, Frederick, or his brothers, Frederick and Jacob, or either of them, would join him in said payment, that then the plaintiffs could not recover. This prayer was right. It was to prevent the jury from being misled in regard to the nature of contracts. That if they could infer from the evidence that this, as propounded, might have been the contract instead of such as was propounded by the appellees, then the latter could not recover. There was evidence adduced by the appellees to sustain this.

*R. H. Alvey*, for the appellees :

The testimony, the rejection of which constituted the first exception, was offered for *a particular purpose*, namely, to show the want of consideration for the prom-

ises set forth in four of the counts of the declaration ; and when three of these counts are examined, it will be found that the consideration for the promises of the defendant was not alone for desistance from contesting the will, but also for waiving and abandoning claim for work and labor, against the estate of the testator. If this evidence were not admissible for the *entire* purpose for which it was offered, it was properly rejected, the Court being called upon to decide the proposition as made in its entirety. This evidence was clearly inadmissible to prove the want of consideration for waiving and abandoning a claim against the estate for work and labor ; and hence, it was offered to support a proposition to which it was not applicable. "The obligation rests upon counsel propounding the question, to show that it is free from legal objection, and the *onus* does not rest either upon the Court or the party objecting, to separate that part of it which may be legal from that which is illegal." *Carroll's Lessee vs. The Granite Manufacturing Company*, 11 *Md. Rep.*, 408.

But the evidence offered was wholly inadmissible. It was proposing to reopen and try that which the agreement had closed.

The question, whether the testator was of sound and disposing mind, and free from undue influences, was not an issue to be tried in this case ; for it was in consideration that such question should *not* be tried by those having a right to try it, that the promise was made by the defendant. The one party had desisted from the exercise of the right, and the other had taken what he supposed to be the advantage of having the will remain uncontested, and it is immaterial now to the validity of the contract, whether the ground of contest was tenable or not. It is enough that the defendant considered the question sufficiently doubtful at the time to induce him to make the promise, and that he supposed he was gaining

some benefit by foreclosing all inquiry on the subject. *Union Bank of Georgetown vs. Geary*, 5 *Peters*, 113, 114; *Price & Martin vs. Thomas & George*, 4 *Md. Rep.*, 521.

In further support of the ruling of the Court below on this exception, see authorities cited in support of plaintiffs' prayer, in defendant's third exception.

1st. The point of the second exception is not sufficiently definite upon which to impute error to the Court below. Supposing it to have been the purpose, in offering this evidence, to prove the true condition of the estate, it should have been stated what the evidence offered would have shewn it to be, to have enabled the Court to see whether the evidence was material; for it could *only* be material, if at all, in proving the estate to be so small as to render it a matter of no interest or concern to either plaintiffs or defendant, whether the will stood or was set aside; and *non constat* that the evidence offered had even a tendency to show any such condition of the estate, nor was it proposed, by the evidence offered, to establish any such condition of the estate, but simply its value at the death of the testator. The materiality of the offer not being apparent, it was right in the Court below to reject it. *Marshall vs. Haney*, 9 *Gill*, 258.

2d. The evidence was not offered to show, nor was it even pretended, that the estate had been exhausted, or even lessened by payment of debts or otherwise; but simply to prove the value of the whole estate at the death of the testator. But when the testator died, and what the condition of his estate *when the alleged promise was made*, are facts non-apparent in the proposed proof, and hence it was not admissible. And this exception cannot be aided by referring to any other exception in the cause, as no other bill of exception is referred to and made part of it. *Gist's Adm'r vs. Cockey & Fendall*, 7 *H. & J.*, 135; *Armstrong vs. Thruston*, 11 *Md. Rep.*, 149.

3d. Inasmuch as the record of the settlement in the

Orphans' Court, referred to in this exception, is not set out, so that this Court can inspect it, and determine whether it was competent and pertinent or not, it is to be assumed here that the Court below did right in rejecting it; and, for the like reason, this Court cannot do otherwise than determine that the Court below did right in rejecting all the offered evidence, because it was not made to appear that it had a tendency to establish any fact that was pertinent or material. *Clemens vs. Mayor & C. C. Balto. use of Volkmar & Wild,* 16 *Md. Rep.,* 208.

The third exception was taken to the granting of the plaintiffs' prayer, and the refusal of the defendant's prayers.

There was no error in granting the plaintiffs' prayer. The plaintiff Mary, as one of the heirs-at-law of her father, had an undoubted right to caveat and contest his will, if she were dissatisfied therewith; and as the will shows on its face that all the estate, real and personal, had been devised and bequeathed to the defendant and his brother, and that the defendant was made sole executor thereof, and was therefore interested in maintaining the will unquestioned, not only for the property acquired thereunder, but for the office created thereby, the sisters' desistance from the intended contest, was ample foundation for the promise made by the defendant; and it neither required to be alleged and proved that such contract would have been successful if prosecuted, nor that the defendant was actually benefitted by such desistance. It was enough that the plaintiff forbore the exercise of an undoubted right at the instance of the defendant, and that the defendant supposed that he was gaining some benefit by stopping and foreclosing all investigation of the subject, by making the promise. *Union Bank of Georgetown vs. Geary,* 5 *Peters,* 99.

Here there were both an object of suit or litigation, and a party who, in respect to that object, was liable to

be proceeded against; and to induce a surrender and abandonment of the right to inquire into the validity of the will, the promise was made. *Jones vs. Ashburnham,* 4 *East.,* 463.

And these facts constitute the elements of a valid promise. *Pillans et al. vs. Mierop et al.,* 3 *Burr.,* 1673; *Owings vs. Owings,* 1 *Har. & Gill,* 488; *Bidwell vs. Catton, Hob. Rep.,* 216; *Simpson vs. Powell,* 2 *Bulstr.,* 262; *Maynell vs. Mackallye, Style,* 459; *Smith vs. Smith, T. Raym.,* 203; *Forth vs. Stanton,* 1 *Wm.'s Saund.,* 210 *b.,* note (c.) 5th *Ed., by Patterson & Williams; Ex parte Lucy, &c.,* 21 *Eng. L. & Eq. Rep.,* 199.

This is not the case of a promise in consideration of *forbearance* to sue for money or other specific thing; but is rather of the character of an agreement for the *final* adjustment or settlement of a controversy, both parties making mutual concession to each other, and being concluded by the agreement. *Porley vs. Gilbert,* 2 *Bulstr.,* 41; *Thornton, &c., vs. Fairlee et al.,* 8 *Taunt.,* 354, (4 *Eng. C. L.,* 130;) *Crowther and others vs. Farrer,* 15 *Adol. & El., N. S.,* 677, (69 *Eng. C. L. Rep.,* 675.)

Nor is this case like those of *Seaman vs. Seaman,* 12 *Wend.,* 381; and *Busby vs. Conoway,* 8 *Md. Rep.,* 55.

The first prayer of the defendant was radically wrong, for several reasons:

1. The prayer itself was well calculated to mislead and confound the jury, inasmuch as the considerations of the promises laid in the second, third, fourth and fifth counts of the declaration referred to in the prayer are different and several, and would therefore have produced a complexed and unexplained question before the jury. *Balto. & Ohio R. R. Co. vs. Resley,* 14 *Md. Rep.,* 424.

2. The prayer was altogether too ambiguous to be submitted to the jury, and it was not the duty of the Court to place a construction on the language employed in it, but it was proper to reject it as offered.

3. It would have submitted questions of law to the jury; the question as to whether there was foundation or adequacy of consideration, for the promises alleged, being one of law for the Court and not of fact for the jury. *Homer vs. Ashford*, 3. *Bing.*, 327; (11 *Eng. C. L. Rep.*, 120;) *Chit. Contr.*, 31, 32.

And in regard to the second prayer of the defendant, it was sufficient reason for rejecting it, that there was not a particle of evidence in the case to support it. It was also obnoxious to the objection that it left a question of law to the jury, that is to say, to determine what amounted to the contract set forth in the declaration; and as there were various counts in the declaration, setting out *different* contracts, it was uncertain to which the prayer referred. *Given vs. Charron*, 15 *Md. Rep.*, 502.

BARTOL, J., delivered the opinion of this Court.

The appellees were plaintiffs below, and brought this suit upon an alleged promise made by the appellant to Mary, one of the plaintiffs, while she was sole, to pay her and each of her sisters $1,000 in addition to the legacies bequeathed to them by their father's will, in consideration that they would forbear and desist from instituting legal proceedings to test the validity of the will, which they had determined to do.

The main question presented by the appeal is, whether in the appellees' prayer, which was granted, there is a sufficient legal consideration stated to support the promise of the appellant.

The will of John Hartle, offered in evidence and incorporated in the prayer, shows that the testator devised to the defendant and his brother Frederick the farm on which the testator resided, containing 203 acres of land, together with all his real and personal estate, subject to the payment of certain pecuniary legacies to the widow and his son Jacob and the several daughters, and appointed the defendant sole executor.

Hartle *vs.* Stahl and Wife.

The hypothesis of the prayer is, that if the plaintiff was one of the daughters and heirs at law of John Hartle, the testator, that she and her sisters were dissatisfied with the will and determined to take legal proceedings to test its validity, and to vacate the same, and the defendant, in consideration that she and her sisters would forbear and desist from instituting such legal proceedings, promised to pay to her and each of her sisters one thousand dollars in addition to the legacies given them by the will, and in consequence of such promise and undertaking of the defendant, the plaintiff and her sisters did desist and refrain from taking any legal proceedings in the premises, and the said will was then admitted to probate, and letters testamentary were granted thereon to the defendant; then a right of action hath accrued to the plaintiffs on and in respect of said promises of the defendant for the recovery of said sum of one thousand dollars.

The objection taken to this prayer is, that it does not affirmatively state that the testator left any assets after the payment of his debts, or show that the plaintiffs would have derived any benefit from setting the will aside, or that there was any sufficient or probable ground for impeaching its validity; and therefore it is contended that the promise of the defendant was without any legal or valid consideration to support it. It is well settled that where an action is brought upon a promise made in consideration of forbearance to sue, it must appear that there was some one in *esse* liable to be sued, and something in relation to which suit could be brought. *Jones vs. Ashburnham*, 4 *East.*, 456. And it is also settled that if in such case it appear that there existed no probable ground upon which such suit could be maintained, the consideration of the promise fails and no action can be maintained thereon. *Edwards vs. Baugh*, 11 *Mees. & W.*, 639; *Wade vs. Simeon*, 2 *Man.*, *G. & S.*, 548; (52 *E. C. L. R.*, 546.) Those cases have been cited and relied on by the appel-

lant as conclusive of this; but it does not seem to us to fall within the same principle. The promise sued on here was not made in consideration of the forbearance by the plaintiffs to sue for the recovery from the defendant of a sum of money or any specific thing, but was a promise or agreement for the compromise or settlement of a controversy in relation to a matter in which both parties were interested.

In *Stoddard vs. Mix*, 14 *Con.*, 22, the rule of law is correctly stated thus : " The mere forbearance of a claim or demand before suit brought, which is not in fact a legal demand, is not of itself a sufficient consideration to support a promise. But either the compromise of a doubtful claim, or the relinquishment of a pending suit, is a good consideration for a promise," and for this are cited, *Bidwell vs. Catton, Hob.*, 216; *Longridge et al. vs. Dorville et al.*, 5 *Barn. & Ald.*, 117 ; *Thornton vs. Fairlie*, 8 *Taunt.*, 354 ; *Union Bank of Georgetown vs. Geary*, 5 *Peters*, 99 ; *Pow. on Con.*, 346, 354 ; *Chitty on Con.* 9.

" The prevention of litigation is a valid and sufficient consideration ; for the law favors the settlement of disputes." *Parsons on Con.*, 363. " To support a compromise it is sufficient that the parties entering into it thought, at the time, there was a *bona fide* question between them, though it may eventually turn out there was in fact no such question. *Ex parte Lucy, &c.*, 21 *E. L. & E. R.*, 199. The same principle was recognized by the Supreme Court in *Union Bank of Georgetown vs. Geary*, 5 *Peters*, 98.

In *Stapilton vs. Stapilton*, 1 *Atkyns*, 10, Lord Hardwicke (referring to *Cann vs. Cann*, 1 *Peere. Wm.'s*, 727,) says, "it was laid down that an agreement entered into upon supposition of a right, or of a doubtful right; though it after comes out that the right was on the other side, shall be binding, and the right shall not prevail against the agreement of the parties, for the right must always be on

one side or the other; and, therefore, the compromise of a doubtful right is a sufficient foundation of an agreement.

We refer also to *Smith vs. Smith, T. Raym.*, 203; *Taylor vs. Patrick,* 1 *Bibb,* 168; *Fisher vs. May's heirs, &c.,* 2 *Bibb,* 448; *Brown vs. Sloan,* 6 *Watts,* 421, in support of the same principle.

Applying this principle to the case before us, it follows that the promise and agreement of the defendant upon which this action was brought is supported by a valid legal consideration. It is not necessary that it should affirmatively appear that the plaintiffs would have been benefitted by setting the will aside, or that they could have succeeded in the attempt.

"It is a perfectly well settled rule that if a benefit accrues to him who makes the promise, or if any loss or disadvantage accrues to him to whom the promise is made, although without benefit to the promiser, in either case the consideration is sufficient to sustain an assumpsit." *Parsons on Con.,* 357.

Here, the plaintiff, as one of the heirs-at-law, had a legal right to caveat the will and test its validity, and the defendant had an interest in maintaining the will, both as devisee, and in respect to his office of executor thereby created.

This case is unlike *Seaman vs. Seaman,* 12 *Wend.,* 381, and *Busby vs. Conoway,* 8 *Md. Rep.,* 55. In those the declaration was held to be insufficient, because it did not appear from the averments that the consideration of the promise sued on was any loss or detriment to the plaintiff, or any benefit to the defendant. It was not averred that the testator left any assets, or that anything passed under the will. Here the declaration in the second, third and fourth counts avers that John Hartle devised to the defendant real estate of great value, *of which he died seized and possessed,* and the fifth count avers that under

the will the defendant became entitled to a large and valuable estate in lands, whereof the testator died seized.'' These averments are sufficient to show that an estate passed to the defendant under the will, and, consequently, that he had an interest and benefit in maintaining the will and avoiding a contest with regard to its validity.

What was said by the learned Judge in *Seaman vs. Seaman*, is perfectly applicable here. After stating the right of the plaintiff to caveat the will, he says : '' This right, secured to him by law, he gave up in consideration of the agreement upon which this suit is brought. Whether he would have succeeded in the litigation, is not the test. If this were so, there would be no security nor anything gained by compromising a doubtful or litigated claim by stipulation to be afterwards fulfilled ; for then to procure a fulfilment of it the party would be obliged to show he gave up a right or claim which he could have enforced at law, and the old controversy must be litigated over again.''

We are of opinion that there was no error in granting the appellees' prayer, or in refusing the first prayer offered by the appellant.

The second prayer of the appellant was without evidence to support it, and was therefore properly refused ; all the proof shows that the promise of the defendant was absolute, and not made upon any such condition as that stated in the prayer.

It follows also, from what we have before said, that the evidence offered by the appellant in his first bill of exceptions was properly excluded. It was not competent for him to try in this suit the question of the validity of the will, or the testamentary capacity of the testator, as was said in *Seaman vs. Seaman*, the right of the plaintiffs to recover upon the agreement does not depend upon their establishing the invalidity of the will, '' the compromise

itself proves *prima facie* an acknowledgment by the defendant that there was color for the objections to the will."

Nor is there any ground for reversal on the appellant's second exception.

This exception merely states that the defendant offered to prove the value of the estate left by the testator, and further offered the settlement made in the Orphans' Court of his personal estate, for the purpose of showing the value of the whole estate owned by him at the time of his death, which testimony was excluded.

This statement of the evidence is too indefinite to authorize the appellate Court to judge of its pertinency.

The presumption is always that the ruling of the inferior Court is correct, unless the contrary appear.

It is not stated what the evidence would have shown; nor is it set out in the exception that the estate was of no value, or that the appellant took nothing under the will; without this the evidence would be immaterial, and was properly rejected.

*Judgment affirmed.*

