# SUPERIOR COURT OF BALTIMORE CITY.

Filed June 6, 1899.

STATE OF MARYLAND
VS.
NORTHERN CENTRAL RAILWAY COMPANY.

*George R. Gaither, Jr.*, for plaintiff.
*Bernard Carter* for defendant.

DENNIS, J.—

By Chapter 72, of the Acts of 1827, the Baltimore and Susquehanna Railroad Company was incorporated; and by one of the provisions of that Act it was stipulated that its property should be exempt from taxation.

The Act of 1854, Ch. 250, incorporated the present defendant, consolidating it with the Baltimore and Susquehanna Railroad Company, and granting it all the rights, franchises and immunities possessed by the latter company.

By the Acts of 1872, Ch. 234, and of 1874, Ch. 408, a tax of one-half of one per cent. was levied annually upon the gross receipts of all steam railroad companies incorporated by this State and doing business herein.

To the payment of this tax the defendant objected, claiming that by virtue of its possession of all the immunities of the Baltimore & Susquehanna R. R. Co., whose property was expressly declared to be free from all taxation, it had fallen heir to this exemp-

tion; while in behalf of the State it was contended that the effect of the Act of 1854, incorporating the defendant, was to create a new corporation, which derived all its rights and franchises by virtue of, and under the new grant—that the right to exemption of its property from taxation which it had acquired by reason of its ownership of the privileges and immunities of the Baltimore & Susquehanna R. R. Co., was held under this new grant, and that the Constitution of 1851, having made all charters granted subsequently repealable or subject to modification at the will of the Legislature, and this right to exemption having been acquired by this subsequent charter (to wit, the Act of 1854), was subject to repeal by the Legislature, and had been repealed by the Acts of 1872 and 1874, and that, therefore, the property of the defendant was subject to the tax imposed by those Acts.

A suit was brought by the State to enforce this tax; the lower Court decided in favor of. the contention of the company, but the Court of Appeals reversed this decision, sustained the claim of the State, and remanded the case for further proceedings, Judge Alvey dissenting, in an elaborate opinion. State vs. N. C. R. R. Co., 44 Md.

While this was the status of the litigation, and before any further steps were taken by the counsel for the State, to render this decision effective, the Act of 1880, Ch. 16, was passed, and the true construction and validity of this Act are the questions now before us for determination.

In construing a statute, in order to arrive at the true intention of the Legislature, we must look to the whole of it—the preamble, as well as the full text. In fact, the preamble has been called the "key to the construction"; and in this case, it seems to me to throw light upon, and make clear, not only the intention of the Legislature, but every provision that might otherwise, by forced construction, appear in any way doubtful.

The preamble recites the respective claims of the State, and of the company (the claim of the State being that, by reason of the fact that the Act of 1854, Ch. 250, was passed during the existence of the Constitution of 1851, the exemptions thereby granted were repealable, and had been repealed, the

claim of the company being to the contrary), and then further recites that the State, instead of leaving the question to be decided by the Supreme Court of the United States, preferred a *settlement* and *compromise* of the matters in *controversy* and *litigation*, and that the company was willing, in *settlement* of *said matters*, to pay an annual tax of one-half of one per cent. on the gross receipts of the company within the State, upon the terms and conditions set forth within the Act.

The Act then provided that the company should have all the powers, rights, privileges and immunities, and be subject to all the duties. and obligations, granted to the Baltimore & Susquehanna R. R. Co. under the Act of 1827, Chapter 72; but with this limitation, that the property, franchises and gross receipts of the company shall be subject to State taxation, *to the extent of one-half of one per cent. on the gross receipts of the railroad and its branches*, lying within the State of Maryland, and from all other sources within said State; and that said *property* and *franchises* and *gross receipts should not be subject to any other* tax under the laws of Maryland. It was further provided that before the Act should become binding upon the State, it must be specifically accepted by the company in evidence of its assent thereto, and that the company should make certain money payments, fixed by other provisions of the Act.

The acceptance by the company of this Act, and payments of money provided for under it are conceded.

In my judgment this Act was a contract between the State and the defendant company, forever binding until abrogated by the consent of both parties to the contract, and in no way subject to repeal or modification by the Act of any subsequent Legislature; and, therefore, the Assessment Acts of 1896, by which a greater tax was imposed upon the gross receipts of the company, is void, because repugnant to the Constitution of the United States, which forbids a State from passing a law impairing the obligation of a contract.

That the State had a right to make such a contract seems clear. Its powers are limited only by the Constitution of the State and of the United States; and when, in its judgment, for the rea-

sons set forth in the Act, it considered the settlement a proper one for the State, its judgment is conclusive.

That the contract was supported by a sufficient consideration, moving from the company, appears on the face of the Act. It was a settlement of all *disputed questions* between the State and the company, under which the company paid a large sum to the State, agreed to pay forever an annual tax of one-half of one per cent. on its gross receipts, to abandon its claim to exemption from taxation, and its right to have decided by the Supreme Court of the United States the question as to whether it was bound to pay anything at all. Leaving out the money payments, the settlement of a doubtful claim, or relinquishment of a pending suit, is a good consideration for a contract; and it is sufficient if the parties thought at the time there was a *bona fide* question between them, although it may eventually turn out there was no such question, in fact.

Harite vs. State, 27 Md. 172, L. R. 5 Q. B. 541.

Callisher vs. Bis.

The argument that because the right of the company to take the case to the Supreme Court, at the time of the passage of the Act of 1880, had not matured, is of no weight. It is true that the litigation was not then in a state in which the company could have taken an appeal; the situation, because of technical reasons, was not ripe for it; but it is undeniable that the company had at all times a reserved right under which they could, at the proper time, have had the question in dispute between it and the State passed upon by the Supreme Court of the United States; and this right they forever abandoned by accepting the compromise of the Act of 1880.

If, then, the Act of 1880 was a contract duly entered into by the parties—was a contract which both parties were fully competent to make—and was supported by a sufficient consideration, upon what principle can it be repealed, without the consent of both parties to it? And yet the Act of 1896 does, according to the learned counsel for the State (and in this much of the contention I concur), undertake to repeal this Compromise Act of 1880, in so far as the rate of taxation is concerned, and to subject the gross receipts of the company to a much higher rate of taxation, without restoring to the company any of the advantages which passed to the State under the Act of 1880, and when the company, by accepting the provisions of said Act, has forever lost its right to have the question of the right of the State to tax it at all, by reason of the Act of 1827—incorporating the Baltimore and Susquehanna Railroad Co.—passed upon by the Supreme Court of the United States.

The learned counsel for the State contends that one Legislature cannot make an exemption from taxation so as to be unrepealable by a future Legislature. This is true, in this State, since the Constitution of 1851, where the exemption is granted in a charter; in such a case, the charter is accepted by the company subject to this reserved right of repeal or modification, a provision first ingrafted upon our organic law by that Constitution, and secured by our several subsequent Constitutions but where the company has been duly chartered, and where the exemption from taxation is provided for in a contract between the State and the company, which contract is based upon new and sufficient consideration, and is in all other respects legal, a clause of exemption from taxation is just as binding and effective as any other provision of the contract. Learned judges have often expressed regret that it should be in the power of one Legislature to thus barter away the sovereign power of taxation so as to be beyond the remedial action of a subsequent Legislature; but no case has been cited in which the right to nullify such an exemption where it is secured by contract between the State and company has been upheld.

As has been said, if this exemption had been simply contained in the charter, it would be repealable by reason of the constitutional provision; and while every charter is commonly said to be a contract between the State and the incorporators (very inaccurately so stated, according to the true definition and idea of a contract and charter, respectively, as now adopted by the best authorities); yet, even if it be conceded that a charter is a contract, it by no means follows that every contract is a charter, or modification of a charter, even though such contract may have reference to some of the sovereign powers of the State.

In the present case, it is clear that the Act of 1880 was neither a charter nor modification of the defendant's charter. It invested it with no additional *corporate* powers or rights; it left them unaltered as they stood; and simply provided that, for consideration satisfactory to the State which were offered by the company, the State would subject its property to a certain fixed method and rate of taxation.

The constitutional provision was never intended to interfere with the *right of the State to enter into such* contracts when it deemed it proper to do so for its own benefit and protection; and such a contract is just as obligatory upon the State as if it was made between it and a private person, and cannot be repealed under the provision of the Constitution of the United States forbidding the State to pass any law *impairing the obligation of contracts,* without the consent of both parties to it.

I agree with the learned counsel for the State in his construction of the Acts of 1890, Chapter 559, and the Assessment Act of 1896, and think these Acts were intended to repeal, and that the repealing language used is broad enough to cover, the extension claimed by the defendant under the Act of 1880; but it is unnecessary to go at length into the reasons for this conclusion, in view of the ruling on the question discussed above.

I will, therefore, reject the prayers of the plaintiff and the second prayer of the defendant, and grant the defendant's first prayer.