THE SECOND NATIONAL BANK OF BALTIMORE *vs.*
WILLIAM H. YEATMAN and VINCENT M. WEBB.

*Conveyances with Intent to Defraud Creditors.*

The appellant being a judgment creditor of W. H. Y. filed a bill to
have a farm, of which the title was in the name of V. M. W.,
charged with the debt of W. H. Y., on the ground that the convey-
ance to V. M. W. was fraudulent, the farm being paid for with the
moneys or property of W. H. Y. To establish the secret trust, the
appellant offered evidence that the title to property on Stricker
street in Baltimore City, which had been bought by W. H. Y., was
put in the name of R. H. Y., but that W. H. Y. in dealing in and
about the property acted as the real owner; that this property was
exchanged for other property in said city, on McHenry street, and
that when the transfer of titles was made, the McHenry street prop-
erty was conveyed to V. M. W.; that subsequently the McHenry
street property was exchanged for the farm, which was taken pos-
session of by W. H. Y's son. HELD:

That the appellant was entitled to a decree for the sale of the farm
for the payment of its debt.

APPEAL from the Circuit Court for Baltimore County, in
Equity.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., MILLER,
ALVEY, ROBINSON and IRVING, J.

*A. H. Robertson,* for the appellant.

*George E. Nelson* and *William Rowland,* for the appel-
lees.

ROBINSON, J., delivered the opinion of the Court.

The complainant, a judgment creditor of William H.
Yeatman, alleges that the said Yeatman purchased a

tract of land in Baltimore County, and caused the same to be conveyed to Vincent M. Webb, his brother-in-law, with intent to hinder, delay and defraud his creditors; that the property is now held by Webb in secret trust for Yeatman, and prays that Webb may be declared trustee of Yeatman, in respect to the said tract of land, and for other and further relief.

The undisputed facts show, that in 1876 William H. Yeatman purchased of Edward Otis Hinkley, trustee, a lot of ground on Stricker street, upon which were built twelve small houses, the title to which was conveyed to Robert H. Yeatman, his brother. That this lot, with the improvements, was exchanged with the Baltimore City Loan and Trust Company, for property on the corner of Monroe and McHenry streets, the title to which was conveyed to Vincent M. Webb; and that this latter property was exchanged with Edgar W. Rowe for a farm in Baltimore County, which is now in the possession of William H. Yeatman's son, and which is the subject-matter in controversy in this suit.

The theory upon which the complainant's claim to relief is based, is that William H. Yeatman was the owner of the Stricker and McHenry street properties, and is now the real owner of the farm in Baltimore County, and that the several conveyances were made to Robert H. Yeatman and Webb, for the purpose of concealing the real ownership of these properties, and thereby deceiving and defrauding his creditors. And the question is, whether this theory is satisfactorily established by the proof?

Henry C. Norris, of the firm of Norris & Son, conveyancers, testifies, that in the early part of the summer of 1876, William H. Yeatman requested him to draw a lease of the Stricker street property, and to make out the papers in the name of his brother, Robert H. Yeatman, saying at the time he was embarrassed, and could not hold property in his own name.

Jonathan Norris, the other member of the firm, testifies, that William H. Yeatman bought the lot on Stricker street from Edward Otis Hinkley, trustee; and that it was conveyed by his request to Robert H. Yeatman, his brother, for the reason assigned by him, that being embarrassed, he could not hold property in his own name. That in May, 1876, William H. Yeatman brought to witness a note drawn by one Redinger, and said they expected to get money in a few days from the sale of ground rents on the Stricker street property. Witness got the note discounted, and not being paid at maturity, he called on Robert H. Yeatman about the note, and after some consideration, he said "when William sells his houses, or when we sell," witness does not recollect distinctly which, "the note should be paid."

That subsequently, William H. Yeatman spoke of the Stricker street property as belonging to him, and said it stood in his brother's name, to prevent its being sold for his debts.

S. S. Pleasants testifies, that in the early part of 1878, William H. Yeatman requested him to procure a loan on the Stricker street property, stating the amount he wanted, the per cent. he was willing to pay, and the incumbrances upon the property; that about two months afterwards, witness was requested by the secretary of the Baltimore City Loan and Trust Company to examine the title of the Stricker street lot, and to make out the papers for a transfer of the same for the McHenry street property, belonging to the Company, and that he was surprised upon examination to find that "it stood in the name of Robert H. Yeatman."

William subsequently assured witness that he was acting as agent for his brother Robert, and relying upon these assurances, the exchange was made. The title to the property, however, was conveyed to *Vincent M. Webb*, and not to *Robert H. Yeatman*. It further appears, that

all the negotiations in regard to the exchange of these properties were conducted by William H. Yeatman, and he never intimated that the Stricker street lot stood in the name of his brother, until it was discovered in the examination of the title.

Having made this exchange, he next offers the McHenry street property for a farm belonging to Edgar W. Rowe and others.

John J. Dobler testifies, that William H. Yeatman requested him to prepare the papers, and to have the farm conveyed to his brother Robert, but upon finding the title to the McHenry street property stood in the name of Webb, the farm was also conveyed to him, and not to Robert H. Yeatman. The deed upon its face purports to be made upon a money consideration; whereas, in fact, the consideration was an exchange of properties between the parties.

It is thus clearly established, that William H. Yeatman bought the Stricker street property, and had the title conveyed to his brother Robert to protect it against his creditors; that after the houses were built he endeavored to negotiate loans upon the property; that failing in this, he offered it in exchange for property belonging to the Baltimore City Loan and Trust Company; that all negotiations which led to the exchange of these properties, were conducted by him, and in his name as owner, and he never once intimated that he was acting as the agent of his brother, until the Company found out that the title stood in his name; that subsequently he exchanged this property with Rowe for the farm in Baltimore County, and that immediately thereafter the son of William H. Yeatman, took possession, and now remains in possession of said farm.

In all the negotiations in regard to the exchange of these properties neither Robert H. Yeatman or Webb, the ostensible owners, took any part, nor do they seem to have been consulted. And in addition to these facts, we have

the false, and intentionally false recital of the consideration in the deed to Webb.

Such proof as this is inconsistent with a *bona fide* title in Robert H. Yeatman and Webb, and shows, we think, a deliberately contrived scheme on the part of William H. Yeatman to conceal his ownership in these properties, in order that he might thereby defraud his creditors.

Nor is this conviction in any manner weakened by the answers of the defendants, when taken in connection with the testimony of Robert H. Yeatman himself.

He testifies it is true, that he paid for the Stricker street lot, but admits that the payment was made by the sale of ground-rents after the houses were built. He further admits, that William H. Yeatman assisted in building the houses, with the understanding that if " they had good luck" with the property he would pay him whatever was right, and that the wife of William loaned to the witness five hundred dollars to aid him in their construction.

His explanation of the conveyance of the McHenry street property to Webb, is equally unsatisfactory. He says " he owed Webb right smart for his labor and for money borrowed, so he sold three houses to him."

To say the least, the testimony offered on the part of the complainant, is sufficient to require of the appellees full and satisfactory proof, in regard to the *bona fides* of the conveyances under which they claim. And yet not a single witness is offered by them, nor is there any attempt to explain or reconcile the testimony in this record, with good faith on their part. Webb whose title is assailed and who was a competent witness, is not examined, nor does he attempt to give any explanation of the circumstances under which he acquired title to the property.

Upon a careful examination of all the testimony we are of opinion that the farm in Baltimore County the matter

in dispute in this suit, belongs in fact to William H. Yeatman, and that he was the owner also of the McHenry and Stricker street lots, and that the titles thereto were conveyed to his brother Robert and to Webb, for the purpose of concealing the true ownership from his creditors.

It follows from what we have said, that Webb must be considered as holding the title to said farm in *secret trust* for William H. Yeatman, and that the appellant being a judgment creditor prior to the titles now assailed, is entitled to a decree for the sale of the property for the payment of its debt.

The decree below will be reversed and the cause remanded, in order that a decree may be passed in conformity with the opinion of the Court.

> *Decree reversed, and*
> *cause remanded.*