## WILLIAM L. WISE et al. *vs.* DORA PFAFF.

*Fraudulent Conveyances—Evidence—Decree in Personam—Costs.*

A husband and wife, who were indebted upon an overdue mortgage, at a time when the mortgage was about to be foreclosed and when they knew the property would not sell for enough to pay the mortgage debt and that they would be liable for the deficiency, conveyed to the defendant, a kinsman of the husband, another piece of property owned by the wife. The mortgagee obtained a decree *in personam* against the husband and wife for the deficiency in the proceeds of sale, and afterwards filed the bill in this case asking that the said conveyance to the defendant be vacated because made with intent to defraud him. The consideration expressed in the deed was five dollars and other good and valuable considerations; the defendant's sworn answer alleged that he accepted the deed in payment of the sum of $400 previously loaned by him to the married woman and secured by a note; in his testimony the defendant said that the consideration was the sum of $585 due him by both husband and wife. The evidence showed that the note of the wife to the defendant was not due at the time of the execution of the deed to him, and was endorsed by third parties which made it secure, and also that the defendant allowed the grantor to collect the rent of the property conveyed to him for more than six months after the execution of the deed. Neither the husband nor the wife tes-. tified in the cause. *Held*, that the evidence shows that the conveyance to the defendant was not a *bona fide* transfer but was made for the purpose of hindering and defrauding the plaintiff and that it should therefore be set aside.

Upon a bill to vacate a conveyance by a debtor to the defendant because fraudulent as against the plaintiff, a creditor of the grantor, the decree vacating the deed should not also direct the defendant to pay the amount of plaintiff's claim and provide that unless he does so the property conveyed shall be sold. In such case a decree for the debt *in personam* against the grantee is not proper.

Upon the reversal of such a decree *in personam*, which was correct in so far as it vacated the deed, each party was ordered to pay his own costs in this Court, and the appellant was ordered to pay the costs in the Court below.

Appeal from Circuit Court No. 2, of Baltimore City (Dobler, J.)

The cause was argued before McSherry, C. J., Fowler, Briscoe, Boyd, Pearce, Schmucker and Jones, JJ.

*John F. Williams* and *George A. Solter*, for the appellants.

*W. Burns Trundle*, for the appellee.

Boyd, J., delivered the opinion of the Court.

This is an appeal from a decree declaring a deed from Ella L. Watts and husband to the appellant fraudulent and void, and appointing trustees to sell the property unless the debt due the appellee be paid as therein provided. Mr. and Mrs. Watts gave the appellee a mortgage on the 26th of May, 1884, for one thousand dollars, on property on Druid Hill avenue in Baltimore. The property was sold on September 15th, 1902, under a decree of the Circuit Court for Baltimore City for $710. The sale was ratified December 19th and the next day an auditor's account was filed which showed a deficiency of $551.82, which was ratified on January 2nd, 1903. Subsequently a decree *in personam* was entered against the mortgagors for the amount of the deficiency, as provided for in the statute. On November 12th, 1900, Mrs. Watts purchased at a trustee's sale the property in controversy (which is on Woodbrook avenue in Baltimore City) for $510, and it was duly conveyed to her. The deed from Mr. and Mrs. Watts to the appellant is dated June 7th, 1902, the consideration named is "five dollars and other good and valuable considerations," and it is conveyed "subject to an annual rent of sixty dollars, payable on the first day of June and December."

The bill was filed on the 15th of February, 1903, and alleges that the deed to the appellant is voluntary, made to avoid and evade the liability of the grantors for the balance due by them on the mortgage and note, and for the fraudulent purpose of putting the property beyond the reach of the appellee in order to hinder, delay and defraud her in the collection of her said debt, which intent and purpose was shared in

by the appellant. It also alleges that he held the title in secret trust for the use and benefit of Ella L. Watts. In his answer he denies that the deed was voluntary or fraudulent, or that he held it in secret trust for Mrs. Watts, and alleges that he accepted the deed in payment of the sum of $400 loaned by him to her on the 15th of October, 1901. An answer was also filed by Mr. and Mrs. Watts, alleging substantially the same facts.

The plaintiff, after proving the mortgage and note, and introducing the record of the foreclosure proceedings, the deed to Mrs. Watts and the one from her and her husband to the appellant rested, as she had made out a *prima facie* case for relief. The appellant and a sister of Mrs. Watts then testified, but neither Mr. nor Mrs. Watts went on the stand. The plaintiff then offered some evidence in rebuttal and, after hearing, a decree was passed as stated above, which also required the appellant to pay or bring into Court within thirty days from date the amount of the decree against Mr. and Mrs. Watts, with interest and costs. The mortgage to the appellee had been overdue for some years, and was renewed on the 26th of May, 1901, until May 26th, 1902—at least the time for payment was extended until then. On the 27th of May Mr. Trundle, the appellee's attorney, notified Mrs. Watts that he was instructed to say that the appellee would not renew the mortgage, as she had use for the money. Mrs. Watts replied, expressing surprise and asked for six months' time in which to pay the money. A number of letters passed between her and Mr. Trundle—one on May 29th stating that his client would wait until July 1st, but no longer. Mrs. Watts then wrote asking him to prevail on the appellee to take the house for the mortgage and on July 7th he replied stating that the appellee declined to do that, but would extend the time for payment until August 4th. Mrs. Watts wrote again saying that if the property was sold at that time it would not bring six hundred dollars, and urging him to use his influence to get the appellee to take the property. On July 12th he wrote telling her that his client declined to accept the property, but

said that she would accept five hundred dollars by August 4th and let the balance stand for a year.   On August 12th he notified the mortgagors that a decree for the sale of the property had been passed, and unless the amount due was paid by the 20th inst. the property would be advertised.

It will be observed that the letter notifying Mrs. Watts that the money must be paid by July 1st was dated May 29th, just a little over a week before the deed was made to the appellant.   Mr. Wise did loan Mrs. Watts the four hundred dollars on October 15th, 1901, as is shown by her note and his check, but the note was payable one year after date and hence was not due for some months after the deed was made. It was also endorsed by two sisters of Mrs. Watts.   The appellant testified that when he loaned the money Mrs. Watts offered to give him a mortgage on this property, but he did not care to put her to the expense, and he "let the matter run along."   He said "They owed me other money besides that, her husband I should say, for a while, and then I asked them if they couldn't let me have the money and finally they told me they would sell me the property and after thinking it over a while, I finally concluded to accept a deed and just wipe out the amount that they owed me."   He said Mr. Watts owed him $42 on a note, and interest on it for a little over four years, also $52 and interest for about five years, and $48 he gave him on May 23rd, 1902, to pay taxes and water rent on the Druid Hill avenue property, and they owed taxes on the Woodbrook avenue property for 1901, and a portion of those for 1902.   On cross-examination, in answer to the question when Mrs. Watts or either of them offered to give him the deed, he said "sometime during the month of May, I don't know whether it was the first part or the latter part."   Mr. Watts is a first cousin of the appellant and was also in his employ.   The appellant said in his testimony that "the $400 was not the consideration as my evidence before showed, that they owed me $585."   So we have three considerations named—$5 and other good and valuable considations in the deed ; $400 in his answer which is sworn to, and

$585 in his testimony. It can hardly be contended that Mrs. Watts could lawfully transfer her property to pay her husband's debts, at the expense of her own creditors, and therefore the only valuable consideration that can be claimed is the payment of the note of Mrs. Watts for $400. If the transaction was in other respects a *bona fide* one, it might be conceded that the difference between the actual value of the property and the amount paid for it is not sufficient to show fraud, or a failure of consideration, as there were some taxes due, and perhaps some interest on the $400, although that is not mentioned. But the appellee having made out a *prima facie* case, the appellant was called upon to establish the *bona fides* of the transaction. His deed on its face showed a money consideration of only five dollars, and there were many suspicious circumstances which required explanation. It would seem to be difficult to reach any other conclusion from reading this record than that *the grantors* were endeavoring to get this property beyond the reach of the appellee. She had demanded payment of the mortgage by July 1st, through the letter of her attorney dated May 29th. Her letters begging Mr. Trundle to use his influence with his client to get her to accept the property in payment of the mortgage, stating it would not bring six hundred dollars if sold then, and using such expressions "as I have nothing but debt before me for God's sake do not put any more to my name," show conclusively that she understood her liability for any deficiency that there might be, as the result of a sale, and that she believed the Druid Hill avenue property would not sell for enough to pay the mortgage. The relation between the appellant and Mr. Watts was such that there was every probability that he would hear of the position taken by the appellee. Until about the time that the last renewal of the mortgage expired, he was so concerned about the welfare of Mrs. Watts as to be unwilling to take a mortgage from her, by reason of the expense she would incur, and although he gave as a reason for speaking to Mr. Watts about the four hundred dollar loan that he had a chance to use the money, and thought he could use it in a

better manner, when the appellee demanded her money he not only took a deed for the Woodbrook avenue property, but paid the expenses himself connected with the transfer of it. Just four days before the first letter of Mr. Trundle to Mrs. Watts demanding payment of the mortgage, he had given his check to Mr. Watts to pay the taxes on the Druid Hill avenue property, thus showing that as late as May 23rd, he did not seem to be anxious about his money. The note of Mrs. Watts held by him was not only not due for four or five months, but was endorsed by others who, as disclosed by the record, made it secure. These and other facts convince us that he was induced to take the Woodbrook avenue property so as to put it beyond the reach of the appellee.

We do not question the right of a debtor to prefer one creditor over another, in the absence of some proceeding in bankruptcy or insolvency, and if that were all, it would not be sufficient evidence of the lack of *bona fides* in this transaction, but when a creditor takes a deed reciting a consideration other than the indebtedness to him, then swears in his answer that the consideration was $400 and when he goes on the stand swears that it was $585, it must be admitted that such conduct is at least suspicious and does not show a very definite understanding on his part as to what the consideration was. We must concede that mere suspicions are not sufficient to justify the Court in setting aside a deed, but the facts that cause the suspicions are proper to be considered with other circumstances that do tend to show fraud. Mr. Wise said he made no inquiries as to why they proposed to transfer the property to him—he "simply thought it was a case of sell and purchase" and yet he could not tell who owned the ground rent, or the amount of it (said I can't say positive, I think it is $60) or what the property was assessed at. But beyond all this, and conclusive of the question, the record shows that although the deed to him was made on June 2nd, 1902, and the house was then renting for $16 per month, he did not receive a dollar of the rent until January 2nd, 1903, when he received nine dollars from Mr. Watts. It is rather a peculiar coinci-

dence that *that was the same day the audit was ratified, show-ing the deficit of $551.82.* The rent which was due before the deed of assignment did not belong to the appellant, but to Mrs. Watts, *Outtoun* v. *Dulin*, 72 Md. 540. There was therefore no occasion for him to agree to let her collect the back rent, and if this was simply "a case of sell and pur-chase," as the appellant testified, *it is difficult to understand* why he permitted Mrs. Watts to collect the rent of $16 per month for six months after he purchased the property. From June 7th to the time of the first receipt of rent by the appel-lant, Mrs. Watts collected $121 from the tenant, which she kept—six months' rent falling due during that time. The ten-ant testified that he was in arrears to Mrs. Watts prior to March 27th, 1902, and he arranged with her that after that date (when he obtained a position as conductor on the United Railways) he was to pay the regular rent of $16 a month, and what he could on the back rent, and that he had paid up every month. He said he owed nothing on the rent from June 7th, 1902, to the end of that year and during that time he also made payments on the back rent. The receipts from June 25th, 1902, until February 5th, 1903, were signed by Mrs. Watts, "Wm. Wise, *per* E. L. W.," excepting one was "*per* Ellen L. Watts," and another "*per* Watts." On Feb-ruary 5th, 1903, (the date of the first payment after the de-cree *in personam* against Mr. and Mrs. Watts was passed, and the same day a *fieri facias* was issued thereon), Mr. Wise commenced to sign the receipts. When he testified (April 15th, 1903), he had not paid any taxes or ground rent on the property. Although Mr. and Mrs. Watts are parties to this suit, and are charged with fraud, neither of them testified.

Under all these circumstances, we are convinced that there was not a *bona fide* transfer of the property, and the Court below was right in setting it aside. When a case is sur-rounded by so many circumstances, indicating the lack of *bona fides,* and up to the very time that the creditor takes active measures to assert her claim the former owner of the property still reaps all the benefits from it, and, without any

explanation of the absence of the testimony, the grantee does not call the grantors alleged to have been connected with the fraudulent transfer to corroborate him, a Court of equity should not permit such a transfer of property to stand in the way of a *bona fide* creditor. When a creditor attacking a deed proves so many circumstances suggestive of fraud, as there are in this case, the party asserting the validity of the transfer must make a more satisfactory explanation of the apparently fraudulent acts than has been done by the appellant. Secret trusts created to hinder, delay or defraud creditors should be and are condemned by the law. They have been stricken down in many cases, even at the instance of subsequent creditors. Although the facts are different, the principles announced in the following cases are applicable: *Second Nat. Bank* v. *Yeatman,* 53 Md. 443; *Spuck* v. *Logan,* 97 Md. 152; (s. c. 54 At. Rep. 989); *Hinman* v. *Silcox,* 91 Md. 576; *Coolidge* v. *Melvin,* 42 N. H. 510; *Rice* v. *Cunningham,* 116 Mass. 470; *Moore* v. *Wood,* 100 Ill. 454; *Bostwick* v. *Blake,* 145 Ill. 85; *Lukins* v. *Aird,* 6 Wall. 78.

The only other question we deem it necessary to refer to is the form of the decree. We think there was error committed in that, although it was doubtless inadvertently made. The solicitor for the appellee contended at the argument that it was not a decree *in personam* against the appellant, but after declaring the deed fradulent and void, as against the plaintiff, it proceeds, "And it is further ordered and decreed that the defendant, William L. Wise, within thirty days from this date, pay or bring into this Court to be paid to the plaintiff" $551.82, etc. The next paragraph is, "And it is further ordered and decreed that unless the defendant, William L. Wise, shall pay or bring into this Court to be paid to the plaintiff the aforesaid sum of money," etc., that the property shall be sold. It is a decree *in personam* against the defendant for this money and also provides for a sale if he does not pay it. It is such a decree as, if valid, could be enforced under our statute by attachment, *fieri facias* or other proceedings therein provided. Of course it cannot be and it was not contended,

that a personal decree could be properly entered against the appellant. There might be some circumstances which would justify that form if the prayers of the bill included such relief, as was intimated in *Chatterton* v. *Mason*, 86 Md. 236, but not in a case such as this, instituted to set aside a deed conveying leasehold property, the deed for which the grantee still holds. We must therefore reverse the decree to the extent indicated, but as the costs were incurred in the controversy concerning the main question, we will not impose all of them upon the appellee, but will direct that each party pay his own costs in this Court, and that the appellant pay those in the Court below. The cause will be remanded to have the decree corrected by striking out that part which we have referred to as objectionable.

> *Decree reversed in part and affirmed in part, and cause remanded, each side to pay his own costs in this Court, the appellant to pay those below, including the transcript of the record.*

(Decided January 22nd, 1904.)