# HARRY FREEDMAN ET AL.

## vs.

## JOHN EDWARD YOE.

### Fraudulent Conveyance—Evidence.

A conveyance to the grantor's brother-in-law *held* to have been made without consideration and with the intent to hinder and defraud one in the collection of a judgment subsequently obtained against the grantor on account of an assault previously committed by him.

*Decided June 23rd, 1922.*

Appeal from the Circuit Court of Baltimore City (CARROLL T. BOND, J.).

Bill by John Edward Yoe, an infant, by his father and next friend, William George Yoe, against Harry Freedman, otherwise known as Henry Freedman, and Morris Schwartz. From a decree for plaintiff, defendants appeal. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Simon Silverberg* and *I. William Schimmel,* for the appellants.

*J. Britain Winter,* for the appellee.

PATTISON, J., delivered the opinion of the Court.

The proceedings in this case were brought on the 6th day of July, 1920, to annul and set aside a conveyance from

Henry Freedman to Morris Schwartz, his brother-in-law, transferring "seven pieces of property" on Richland Street, in the City of Baltimore, on the ground that the conveyance was without consideration and was made with the intent to hinder and defraud the appellee in the collection of his claim, upon which a judgment for $200 was obtained on the 20th of June, 1920, in a suit brought against him on the 28th day of October, 1919, to recover damages resulting from an assault made upon the appellee by Freedman on the 13th day of October, 1919.

On the 3rd day of November, Freedman executed the conveyance in question, conveying to Schwartz the only property held or owned by him out of which any debt against him could have been collected. On the 7th of November, the summons in the suit was served upon Freedman, and on that day the conveyance was recorded.

The property in question had been purchased by Freedman from James A. Bealmear & Son Company for the sum of $4,200, and the conveyance therefor was executed by J. A. Bealmear & Son Company on the 9th day of May, 1919, the consideration therein mentioned being five dollars and other good and valuable considerations.

To enable Freedman to pay the purchase money therefor, he first procured a loan of $3,500 from the Wyman Park Building Association and, to secure the loan, he executed to it a first mortgage upon the property; and thereafter he borrowed from the Fidelity Loan & Savings Association the sum of $700, secured by a second mortgage upon the property. The payment of this last mortgage was further secured by the obligation of Theodore Seidman, another brother-in-law of Freedman, by whom he was employed at the time of the purchase of the property. These mortgages were resting upon the property at the time of the alleged sale and conveyance to Schwartz.

The rents from the property amounted to $24.50 per week, while the required weekly payments on the mortgages, including the principal and interest, were but $22.14.

To meet the charge that the conveyance was without consideration and was made to hinder the appellee in the collection of his judgment, Schwartz, the alleged purchaser of the property, and Seidman, who had assumed the payment of the second mortgage, testified that Freedman found it difficult to keep up the weekly payments to the associations and the repairs upon the property, so he, as they say, determined to dispose of the property. He first offered it to Seidman and then to Schwartz. The offer made to each of them, and which was accepted by Schwartz, was that he would convey the property to the purchaser, without the payment to him of anything more than the amounts he had paid upon the principal and interest, costs, and expenses of the original conveyance.

At this time, Schwartz was associated in business with one Seidman, but not the one to whom we have referred. The amount to be paid by Schwartz to Freedman for such principal, interest and costs, as ascertained by Freedman and his two brothers-in-law, amounted to $450. Of this amount, Schwartz said he paid to Freedman $50 on the 10th day of October, 1919, by check signed by "Seidman and Schwartz." This, he stated, was the date upon which he agreed to take over the property. But the balance of the $450 was not paid until the 24th day of November, 1919, when Schwartz gave to Freedman his check for $400. Schwartz and Seidman both testified that Freedman had no bank account and very often, when he wanted a check for any purpose, he would go to one of them and get a check, for which he would give the cash.

The name of Freedman, in the book of the Wyman Park Building Association, was erased and the name of Schwartz was inserted in lieu thereof. This was done on the authority of Schwartz, while in the books of the Fidelity Association the name of Freedman remained unchanged.

At one time in his testimony, Schwartz stated that he had been collecting the rents from the property since November

the 3rd, the date of the deed, and at another time, upon cross-examination, he said he began to collect the rents from the property after he gave the check for $400, which was the 24th of November, 1919. He also stated that no written agreement or contract of any kind was entered into between him and his brother-in-law, Freedman, for the purchase of the property; nor was there any receipt taken by him at either of the times when he gave to him the checks for $50 and $400 respectively.

Freedman himself testified that "the only thing Mr. Schwartz returned to me was the money it cost me to settle the houses and the few dollars saved on the principal and the attorney fees and lawyers." The court then asked him: "In other words, you turned them over to him for the mortgages? A. Yes." He stated, however, that the agreement to transfer the property to Schwartz, under the terms mentioned, was before the assault upon the appellee. When asked what he did with the $50 check, he said, "Now, I don't know. I must have cashed it with some one in the family. Q. What did you do with the other check for $400? A. That check, I dont' remember, because I owed a few dollars to Mr. Seidman there and I know I paid him out of that check, and I paid a plumber, Mr. Bowers, on Eutaw Street, and a plumber, which was working on some of those houses there. Q. Do you mean you cashed the check? A. No, sir. I must have left the check with one of the family, and I was drawing the money out of the check as I needed it. It might have been twenty or forty or something like that until I paid it up. Q. Did you have any sort of family arrangement whereby you could draw money out on that basis? A. Well, no. I must have left it with one of my brothers-in-law, whoever I was working for, I am not sure." He was then asked, "Didn't the assault occur on the 15th day of October, 1919? A. I don't remember just what day it was. Q. Do you remember whether this was after the deed? A. What is that? Q. Whether this check was passed after

the deed? A. I am sure I had both checks before that case, or before I ever got into this trouble. Q. You are sure both checks were passed? A. Yes. Q. Suppose I were to tell you the suit in this case was filed on the 28th of October, would you say that was right? A. I don't know. Q. Yet you are still sure both checks were passed before you got into that trouble? A. Yes." The court then asked, "When was the summons served? A. Before the summons was served, I had the checks, your Honor."

Seidman also testified corroborating much of what was said by Schwartz, giving a more detailed statement of the negotiations which resulted in the alleged sale to Schwartz. In fact, Schwartz says that the details of the negotiation were left largely to Seidman.

The court, upon a hearing of the case, passed a decree in which it held that the deed of November the 3rd from Freedman to Schwartz was made without consideration and with intent to defraud the creditors of Freedman, and, as prayed, declared that the judgment was a lien upon the property; and decreed that the property be sold. It is from that decree the appeal was taken.

The right of the appellee to institute these proceedings cannot be questioned under the decisions of this State. *Welde v. Scotten,* 59 Md. 72; *Gebhart v. Merfeld,* 51 Md. 322; *Alexander's British Statutes,* vol. 1, page 501 (Coe's ed.).

In *Zimmer, etc., v. Miller,* 64 Md. 300, this Court said: "In order to justify the annulment of a deed it is necessary to prove a fraudulent intent, and here an apparent difficulty is interposed; for although the actions of men can be conclusively proven, the motives which lurk in their bosoms and control their actions are not susceptible of positive proof. In most cases fraud must be inferred from facts established by competent evidence. * * * As was said by this Court in *Ecker v. McAllister,* 45 Md. 309, 'The intent with which a grantor executes a deed must be gathered from the deed itself, and from his acts and the surrounding circumstances.'

It would therefore seem to be an established rule, that when those circumstances are of such a character as to lead to the inference that there has been a fraudulent intent, the onus of disproving fraud rests on the parties to the transaction."

And in note on page 508 of vol. 1 of *Alexander's British Statutes* (Coe's ed.), it is also said, "Where there is nothing on the face of the conveyance indicating fraud, or some illegal or improper attempt condemned by the law, the burden is on the assailant to show either the absence of consideration, or a fraudulent intent of the grantor known to and participated in by the grantee. But when the circumstances surrounding the conveyance are such as to lead to an inference of fraud, especially where the conveyance is between near relatives, the burden of disproving fraud then rests on those maintaining the validity of the transfer. *McCauley* v. *Shockey,* 105 Md. 646; *Commonwealth Bank* v. *Kearns,* 100 Md. 208; *Thompson* v. *Williams,* 100 Md. 199; *Wise* v. *Pfaff,* 98 Md. 583; *Crooks* v. *Brydon,* 93 Md. 643; *Zimmer* v. *Miller,* 64 Md. 296; *Ecker* v. *McAllister,* 54 Md. 374; *Totten* v. *Brady,* 54 Md. 170; *Fuller* v. *Brewster,* 53 Md. 358; *Price* v. *Gover,* 40 Md. 109."

It is not contended by the appellee that there is anything upon the face of the conveyance in this case indicating fraud, but it is claimed by him that the circumstances surrounding the conveyance are such as to lead to the inference of fraud, and because of this the burden of proof is placed upon the appellants to maintain the validity of the transfer or conveyance, which he claims they have not done, and in that conclusion we agree with the appellee.

There are a number of significant facts and circumstances in this case surrounding the conveyance, from which it may be inferred, when considered together and not alone, that the conveyance was without consideration, and was made to hinder and defraud the appellee in the collection of his judgment.

It is claimed by the appellants, Freedman and Schwartz, that the conveyance was made because Freedman had difficulty in keeping up his payments to the associations, notwithstanding the rents received from the property were greater than the amounts he was required to pay to the associations; and it may also be seen that, at the time of the conveyance, the payments were fully paid up.

It is shown by the testimony of the appellants themselves that the conveyance was made within a few days after the commission of the assault, and then made to a brother-in-law of the grantor, without any profit whatever to him, when the value of real estate in the city was advancing; and that the conveyance, executed on the 3rd day of November, was not recorded until the 7th day of November, four days thereafter, when the summons was served upon Freedman, which was the first notice, so far as the record discloses, he had received of the institution of the suit, which he no doubt apprehended at the time of the execution of the conveyance on November the 3rd, though the recording of the conveyance was deferred until notice was given of the institution of the suit. His or Schwartz' failure to record the conveyance at the time is inconsistent with the apparent haste in its execution. The title to the property, by the conveyance, was taken when Schwartz had paid to him $50 only of the $450 that was to be paid Freedman in the sale and transfer of the property, leaving the remaining sum of $400 unpaid until the 27th day of November.

In his effort to dispose of the property, it is shown by the record that he approached only his brothers-in-law, one of whom was pecuniarily interested in him because of his assumption to pay the second mortgage, if it were not paid by Freedman, and the other was the one who, it is claimed, became the purchaser of the property.

The check for $50, dated October the 20th, which, it is said, was given in part payment of the amount owing to Freedman in the sale and transfer of the property, has

nothing upon its face to indicate the purpose for which it was given, nor was there at the time any written receipt taken from Freedman, showing that it was given for that purpose, and the same may be said of the check of the 27th of November for $400, signed by Schwartz alone.

In fact, it is not disclosed that any memorandum or agreement in writing at all was entered into by Freedman and Schwartz for the purchase of the property, and it is their statement alone that the checks were given in payment of the amount to be paid by Schwartz to Freedman for the sale and conveyance of the property.

The time at which the alleged sale was made, an important factor in the case, Freedman first said was before the assault, but, in his cross-examination, he testified that both of the checks given to him passed to him from Schwartz "before that case or before" he "ever got in that trouble," and yet the check of $400 was not, as claimed by Schwartz, and as indicated by its date, given to him until the 24th of November. There were also contradictions in the testimony of Schwartz.

Upon these facts relating to and surrounding the execution of the conveyance, sought to be annulled and set aside, the inference cannot be avoided that the conveyance of the property by Freedman to Schwartz was without consideration and was made to hinder and defraud the appellee in the collection of his claim against him, and as such inference has not been overcome by the evidence of the appellants, showing the validity of the conveyance, we will affirm the decree of the lower court.

*Decree affirmed, with costs.*