## BLOCH QUEENSWARE COMPANY *v.* METZGER.

### Opinion delivered November 30, 1901.

1. PLEADING—AMENDMENT TO CONFORM TO PROOF.—Where defendant pleaded a counterclaim arising out of a written contract, his pleading will not be treated as amended after verdict to conform to proof of a counterclaim arising out of a verbal contract if objection was made to the introduction of such evidence. (Page 237.)

2. CONTRACT—CONSIDERATION.—Where a written contract obligated appellee to buy and pay for goods from appellant, a subsequent verbal agreement between them whereby appellee was to be paid for certain services rendered to a third party by credits on his account for goods previously purchased from appellant cannot be made the basis of counterclaim in an action for the price of goods sold, as such agreement was without consideration. (Page 237.)

3. CORPORATION—APPARENT AUTHORITY OF PRESIDENT.—The president of a corporation, having authority to make contracts for the sale of its goods and to settle its accounts, has no apparent authority to bind it by an agreement that a purchaser of goods from it might pay for them by rendering services to an independent corporation having substantially the same corporators. (Page 238.)

4. CONTRACT—COUNTERCLAIM—PAROL PROOF—PARTIES.—Defendant entered into a written contract with a realty company whereby he was to do certain carpenter work, for which he was to receive a stipulated sum; the work to be completed on May 1, 1897. The contract was signed by B on behalf of the company. On the same day defendant entered into a written contract with plaintiff, a company having substantially the same corporators as the realty company, whereby, in consideration of the former contract, defendant was to purchase all goods of a certain kind from plaintiff, and it was provided that all goods purchased before May 1, 1891, should be paid for on that day. The latter contract was signed by B on behalf of plaintiff and the realty company. In an action

by plaintiff to recover  on an account for goods sold under the contract, *held*, (1) that the two contracts are to be read as one and entire, and that defendant was entitled to counterclaim whatever sum was due him for work done for the realty company; (2) that, the contract being silent as to how, when or to whom the balance due defendant should be paid, this might be shown by oral proof; (3) that plaintiff had a right to sue without joining the realty company as a party.  (Page 238.)

Appeal from Sebastian Circuit Court.

STYLES T. ROWE, Judge.

Reversed.

### STATEMENT BY THE COURT.

The Bloch Queensware Company is an Arkansas corporation, doing business at Fort Smith.  The Bloch Realty Company is an Ohio corporation.  While the two corporations were not identical, three of the Bloch brothers comprise one and four of them the other; and Abe Bloch, the president of the Queensware Company, was also a member of the Realty Company.  Metzger had a store at Fort Smith, and was also a contractor.  This is a suit by the Queensware Company against Metzger for an alleged balance, due for merchandise, of $1,846.62.

The answer admits the purchase of the goods, but claims that there is due a credit of $210.40 overcharge for goods returned, etc. As to the balance left after this, $1,636.22, set-offs are pleaded based upon the following state of facts: Abe Bloch, as president of appellant company, and as agent of the Realty Company for the purpose, on December 28, 1896, entered into two written contracts with Metzger.  The one designated in the answer as "A" was a contract by which the Bloch Realty Company employed the appellee to do certain carpenter work on a building in Cleveland, Ohio.  Appellee was to finish the work by the 1st day of May, 1897.  The Realty Company was to pay appellee the sum of $5,000, to be paid as follows, to-wit (quoting from contract) : "In such sum on every Saturday night as will pay off and satisfy the laborers working and others employed by the said Rudolph Metzger and the said Rudolph Metzger for his expenses, superintendence and work; all of the amount so to be paid each Saturday night."  This contract was signed by the Bloch Realty Company, by Abe Bloch, and by Rudolph Metzger.  The other contract, designated in the answer as "B," commenced as follows: "This agreement, made and

entered into this 28th day of December, A. D. 1896, by and between the Bloch Realty Company, of Cleveland, Ohio, and Rudolph Metzger, of Fort Smith, Arkansas, witnesseth, that for and in consideration of the said Bloch Realty Company having let and awarded the contract for all carpenter work of whatsoever kind, etc., on the building that is in progress of erection in the city of Cleveland, Ohio," etc. Then follows a clause by which Metzger agrees to buy all goods of a certain kind from the Bloch Queensware Company in Fort Smith, Arkansas, and a clause by which the Queensware Company bound itself to sell to Metzger the goods upon certain terms, etc. There was a provision that all the goods purchased before May 1 should be paid for on that day, and those purchased after that date were to be paid for every sixty days. This contract was signed by the Bloch Realty Company by Abe Bloch, Bloch Queensware Company by Abe Bloch, president, and by Rudolph Metzger. It was also executed on the 28th of December, 1896. It is unnecessary to set out more of these contracts. The answer, in the second count, after setting them out in full, alleges that the two "were executed at one and the same time, and are separate parts of the same contract, and the same instrument of writing, and were intended to be one and the same contract, and were one and the same contract, and were made and entered into by the Bloch Realty Company and the plaintiff and the defendant for the mutual profit and benefit of all the parties to the said contract." It further alleges that all the goods sold by appellant to appellee and embraced in the suit were sold under and by virtue of these contracts, and in no other manner. It is then alleged that it was agreed and understood by all the parties at the time that all sums due by appellee for goods sold to him by the Queensware Company during the life of the contracts should be credited by whatever was due Metzger from the Realty Company "for work and labor in and on the carpenter work of said building and for the superintendence of said building," and the balance, whichever way it happened to fall, be paid in cash by the party owing it. On this construction of the contract, Metzger claims a set-off of $730 as the balance due him by the Realty Company under contract "A." He also sets up a further set-off of $1,750, which he alleges is due him from the Realty Company for superintending the building.

At the trial Metzger introduced evidence tending to show that this latter sum was due him by virtue of an oral agreement with

Abe Block, made at Cleveland, while the building was in progress, whereby he was to assume a more general supervision of the building than was contemplated in the original agreement, and was to receive extra compensation for the same.

Appellant requested a series of instructions to the effect that the two written contracts were separate and distinct, and that appellee could not set-off in this action any demands he had against the Bloch Realty Company on the contract with it for building or superintendence. These were refused.

The court gave the following among other instructions:

"3. But if you find from the evidence that the written contract between Bloch Queensware Company and R. Metzger and the Bloch Realty Company and R. Metzger constituted but one and entire contract, then you should consider the counterclaim of the defendant, and the court tells you the burden of proving the counterclaim is on defendant.

"4. If you find defendant is entitled to recover on his counterclaim, then you should allow him such sums as the evidence shows is due him for carpenter work, less all sums paid, if any, resulting from a failure to perform the carpenter work according to contract, and *also a reasonable amount for extra services, if any, as superintendent of the building, if such services were rendered on demand or at the instance of the duly authorized agent of both the Bloch Queensware Company and the Bloch Realty Company, unless such services were rendered, or to be rendered, free of charge.*

"6. If during the time or after the execution of the written instrument, whether considered as one or two contracts, the Bloch Queensware Company and the Bloch Realty Company and R. Metzger made an oral agreement, or had an understanding, independent of the written agreement[s], that the amount owed to R. Metzger by the Bloch Realty Company for work and labor under a written contract should be credited on the account owed the Bloch Queensware Company for goods, wares and merchandise purchased by R. Metzger, then you should ascertain how much is due plaintiff on the account sued on, and how much is due defendant on the counterclaim in this case, and strike a balance between the account and the counterclaim, and find your verdict for the party in whose favor the balance shall be found."

The answer prayed that the Bloch Realty Company be made a party plaintiff, but we do not find that the court made any order

to that effect. The appellant concedes that the correct amount of the account was $1,636.22. The verdict of the jury was for $156.54 in favor of appellant.

*Mechem & Bryant,* for appellant.

The evidence fails to show any contractual liability on appellant's part for the amount due appellee by the Realty Company, Several papers will be construed together as one contract only when all are between the same parties. Jones, Const. Cont. 281 *et seq.;* 1 Ch. Cont. 126, 127; 13 Am. St. Rep. 344, 351. Parol evidence was improperly admitted to prove an understanding as to credits to be made on appellant's account for work done under the contract with the Realty Company. Jones, Const. Cont. 184, 188-198, 199-217, 233-238, 244-251; 98 N. Y. 288; 44 N. J. L. 331; 45 Ark. 177; 4 Ark. 154; 38 Ark. 344; 9 Ark. 501; 29 Ark. 544; 15 Ark. 543; 24 Ark. 210; *id.* 265; 35 Ark. 156; 30 Ark. 186; 21 Ark. 69; 25 Ark. 191; *id.* 309; 13 Ark. 593; 20 Ark. 293; 19 Ark. 690; 11 Am. St. Rep. 889, 893; *id.* 394. Any assumption by appellant of liability to appellee on his contract with the Realty Company would have been *ultra vires.* 23 Ark. 301, 302; 21 Ark. 305; 58 Ark. 407, 427; 63 Ark. 418; 62 Fed. 360; 131 Mass. 258; 10 Mo. 565; 85 Tenn. 703; 7 Wis. 59; 15 N. Y. Supp. 57; 61 N. H. 589; 83 Mich. 200; 71 Fed. 797; 57 Fed. 51; 85 Tex. 416; 82 Va. 913; 165 Mass. 120; 18 N. Y. Supp. 454; 92 Ala. 427; 63 Ga. 186; 40 Ga. 582; 63 N. H. 145; 37 Me. 256; 29 Me. 123; 83 Ala. 115; S. C. 3 Am. St. 695; 93 Ala. 325; S. C. 92 *id.* 427; 122 N. Y. 135; 144 N. Y. 166; 121 Ill. 530; 130 Ill. 268; 12 Mich. 389; 74 Fed. 363; 54 Conn. 357; 85 Me. 532; 70 Miss. 669; 87 Ia. 733; 107 Cal. 8; Brice, Ultra Vires, 762-4; 7 Am. & Eng. Enc. Law (2d Ed.), 754-758, 695-719, 727-8; 746, 488-792.

*Read & McDonough,* for appellee.

The contracts made by appellee with appellant and the Realty Company were really one entire contract. 45 Ark. 28; 26 Ark. 240; 28 Ark. 391; 49 Ark. 320. Oral evidence was admissible to show the real understanding of the parties. 55 Ark. 115. The Realty Company was a necessary party. 49 Ark. 100; 24 Ark. 555; 38 Ark. 72. Since a motion therefor was made by appellee, and the Realty Company was treated as a party, it will be so considered here. 24 Ark. 326; 62 Ark. 262. The proof cures the

defect of allegation as to the counterclaim for superintendency. 54 Ark. 289; 59 Ark. 215.

WOOD, J., (after stating the facts.)   *First.*   The appellee introduced evidence tending to prove that he and Abe Bloch entered into a verbal contract by which appellee was to perform extra services as superintendent on the building in Cleveland, Ohio, and that he was to receive pay for such services from the appellant by a credit on his account with appellant for merchandise.   This alleged agreement, it is claimed, was made at Cleveland, Ohio, sometime after the execution of the written contracts.   In the fourth instruction the jury are permitted to find "a reasonable amount for extra services, if any, as superintendent," etc.   The only counterclaim for superintendence set up in the answer is that arising out of the written contract, under which it is alleged all of the goods were purchased.   This contract provides for superintendence.   The appellee did not ask to amend his answer to conform to the proof. We cannot treat it as amended after verdict, for appellant objected to the evidence and to the instruction.   In the absence of appropriate allegations setting up a counterclaim for superintendence under the alleged verbal contract, the court erred in admitting proof or instructing the jury upon the subject.

But, even if we concede that the sweeping allegations of the answer are sufficient to set up a counterclaim against appellant under an alleged verbal contract for superintendence, still, in our opinion, the proof utterly fails to establish the liability of appellant for such superintendence.   If all the goods were purchased of appellant under the written contract, as expressly alleged, then there was no consideration to appellant for a verbal contract by which it agreed to pay for the alleged extra services of the appellee as superintendent on a building belonging to the Bloch Realty Company.   Such an agreement, if made, was voluntary, a mere *nudum pactum.*   No counterclaim could be based on it.

Furthermore, Abe Bloch denies, in his evidence, such contract While there was evidence tending to show that Abe Bloch did enter into such a contract, and that he had authority to make contracts for the appellant for the sale of goods and to settle its accounts, there is no proof whatever that he had any authority to make a verbal contract with the appellee on behalf of appellant binding appellant to pay for services rendered the Bloch Realty Company, an independent corporation.   The making of such contract was not

within the apparent scope of his authority. This disposes of the counterclaim for superintendency under the verbal contract. That was a matter between appellee and the Bloch Realty Company, or Abe Bloch. It was no concern of appellant.

*Second.* The counterclaim under the written contracts or contract was established. The contracts should be read together, and considered as one and entire, with the two companies on one side and Metzger on the other. The appellant signed contract "B," which had for its sole consideration, so far as Metzger was concerned, contract "A." Considered as one contract, the companies covenant that they will pay Metzger a certain price for doing the carpenter work, superintending, etc., on a certain building in Cleveland, Ohio, and that they will furnish him certain goods, etc., upon certain conditions. Metzger, on his part, covenants that he will do the work and buy the goods upon the terms and conditions agreed upon. The two companies are composed entirely of Blochs, and all these Blochs, except one, were largely interested in both companies. While nominally and technically they were separate corporations, yet, so far as these contracts were concerned, in their manner of dealing with Metzger, they were, to use the language of Abe Bloch, "the same people." The jury might have found that Abe Bloch, who was president of both companies, and who negotiated the contracts with Metzger, intended that Metzger should understand that the interests of the companies in the contracts were mutual, and that both should be responsible to him for fulfillment. It is immaterial whether the legal status of appellant under the evidence was that of principal or guarantor. In the form in which the suit was brought, the result to appellant would be the same. There was proof to support either view. Considerations in a contract are necessarily reciprocal. The consideration to Metzger was the money he was to receive for his work, superintendence, etc., on the building in Cleveland, Ohio. He agreed, in consideration of this, that he would buy goods of appellant. The agreement was made primarily, it seems, with the Realty Company, that he should buy the goods. Neither the Realty Company nor appellant, as beneficiary of that provision, could enforce the contract in that particular without complying with the covenant to pay him for the work, etc., on the building. They could not compel him to pay for goods bought, so long as they refused to pay him for the house he built. There was no

provision in contract "A" as to how, when, or to whom the balance that might be due him when he finished the work on May 1 should be paid. These important matters were therefore susceptible of oral proof. The provision in contract "B" was that all goods purchased by Metzger before May 1, 1897, should be paid for on that day; those purchased after to be paid for every sixty days. But there was nothing in the contract binding the appellant to sell, or Metzger to buy, goods after the work was finished, May 1,— the time for the termination of the building contract. These are most cogent facts in corroboration of the testimony of the Metzgers that the understanding with Abe Bloch was that the appellant should receive its pay for goods out of what was due Metzger for work on building,—that one account should offset the other, etc., as set up in the answer. There are many other circumstances, but we will not further detail evidence or elaborate reasons.

We do not conceive that the questions of *ultra vires* and of accord executory have any place in the case. The appellant could not receive benefits under the contract, and then repudiate its obligations.

Our conclusion of the whole matter, from a review of the evidence in the transcript, is that appellant was liable on the counterclaim of $730 set up in the answer.

Except for the errors indicated, the instructions of the court were correct.

*Third.* The Realty Company was a proper party defendant, if the appellee had desired to make it so. But the appellant had the right to maintain the suit without joining the Realty Company.

*Fourth.* By deducting from the appellant's account of $1,632.22 the sum $730 as of date August 3, 1898,—the date from which appellant assents that interest may be computed on the balance,—we allow all that appellee claimed or could have recovered below under the counterclaim set up under the written contracts. The judgment will therefore be reversed, and judgment entered here for appellant for $902.22 with interest on the same at 6 per cent. per annum from August 3, 1898.