Magna Pipe Line Company *v.* Ober.

Opinion delivered February 3, 1930.

*John Bruce Cox* and *C. E. Wright,* for appellant.

*Mahony, Yocum & Saye,* for appellee.

SMITH, J. In support of the judgment which appellee recovered in the court below, he testified that Joe and Louis Olsan, who were brothers, operated through two corporations which they owned, one being known as the Magna Pipe Line Company and the other as the Magna Producing Company, and that Olsan Brothers owned a half interest in an oil lease, and he owned the other half. One of these corporations, as its name indicates, was a pipe line company, and the other corporation was engaged in buying and selling oil. Joe Olsan represented to him that he had negotiated a contract to purchase 150,000 barrels of oil at a net profit of ten cents per barrel, but that approximately $50,000 would be required to handle the deal, as the oil would be delivered over a period of several months, the proceeds of such sales to be applied to the payment of the oil, as it was

moved under the contract which the Olsan brothers had negotiated.

Appellee was a stockholder and director in the Exchange National Bank, of Shreveport, and through his connection with this bank he was able to borrow the money required to carry out the Olsan contract.

Appellee further testified, that he and Joe Olsan called on the cashier of the bank and made application for the loan, which was made upon notes signed by all parties, and secured by a mortgage upon the oil lease owned by appellee and the Olsan brothers. Appellee further testified that the terms of his contract with the Olsan brothers were restated in the presence of the cashier of the bank, and that officer testified that he made the loan for the accommodation of appellee, who was a large depositor and officer of the bank. The cashier fully corroborated appellee as to the terms of the agreement, which were that appellee should finance the deal in the manner stated, and that appellee should have one-half of the net profits, which were represented to be ten cents per barrel, less the interest on the loan and the commission charged for making it.

The oil began to move pursuant to the contract, and $25,000 was required to make a payment, but, as the title to the oil lease had not then been examined and approved, appellee obtained from the bank $25,000 on his personal note, and advanced that sum of money to the credit of an account which had been opened in the name of Magna-Ober Producing Company for the purpose of financing the deal.

A few days later appellee stated to the Olsans that he had no writing to show his interest, whereupon the following writing was delivered to him:

"September 22, 1927.

"Mr. J. Ober,

"Shreveport, La.

"Dear sir: This is to confirm our agreement that you are to receive one-half of the net profits derived from the sale of one hundred and fifty thousand barrels to be

shipped by us to Penn Oil Company. This confirms our agreement whereby we acknowledged receiving $25,000, this being your half of the money to apply in financing this deal.

"Magna Pipe Line Company,
"Louis Olsan,
",Secretary & Treasurer."

The law question in the case is the admissibility of the testimony recited above.

It is the insistence of the Olsans that the contract was not one required to be in writing, but was reduced to writing, and, while signed by only one party, was nevertheless accepted and acquiesced in by the other, and has therefore the attributes of a written contract. They are correct in this contention. *Parker* v. *Carter*, 91 Ark. 162, 126 S. W. 836, 134 Am. St. Rep. 60; *Vieth* v. *Mushrush Lbr. Co.*, 167 Ark. 669, 269 S. W. 44.

Upon this predicate it is insisted that it was erroneous and prejudicial to permit appellee to offer testimony to the effect, that he was to share a profit of ten cents per barrel (less interest and commission) whereas the writing provided that he was "to receive one-half the net profits derived from the sale of one hundred and fifty thousand barrels to be shipped by us to Penn Oil Company," and the testimony in appellant's behalf showed that no profits had been realized, but, on the contrary, an actual loss had been sustained.

We think it quite apparent that the writing referred to and copied above, was not the complete contract between the parties, and did not purport to be. It was merely a written confirmation of the fact, that there was an existing contract between the parties, the details of which the writing did not purport to recite.

In the chapter on Evidence in 22 C. J., page 1283, § 1715, it is said: "Where a written instrument, executed pursuant to a prior verbal agreement or negotiation, does not express the entire agreement or understanding of the parties, the parol evidence rule does not

apply to prevent the introduction of extrinsic evidence with reference to the matters not provided for in the writing, and under such circumstances it is not necessary that there should be any allegations of fraud, accident, or mistake in order to render parol evidence as to the real contract between the parties admissible.''

Many cases from all the States are cited in support of the text quoted, and among them the following cases by this court: *American Sales Book Co.* v. *Whitaker,* 100 Ark. 360, 140 S. W. 132, 37 L. R. A. (N. S.) 91; *Cox* v. *Smith,* 99 Ark. 218, 138 S. W. 978; *St. Louis, etc. R. Co.* v. *Wynne Hoop Co.,* 81 Ark. 373, 99 S. W. 375; *Bloch Queensware Co.* v. *Metzger,* 70 Ark. 232, 65 S. W. 929. Other cases by this court might be cited, but this rule of evidence does not appear to require further discussion.

This question of law being settled adversely to appellant's contention, there remains only the question of fact as to what the *net profits* were within the meaning of the contract.

Appellant submitted a statement showing the cost of the oil to have been $130,696.95, and its sale price $146,280.40, but from the difference, $15,583.45, they subtract various items in arriving at what they say were the net profits, included in which was a purported fee of one cent per barrel to the Penn Oil Company itself, and some dishonored checks given by that company in payment of the oil.

The verdict returned in appellee's favor was in the sum of $6,642.54, which is one-half of $15,000, less one-half of the interest and commission, which amounted to $1,712.93.

The testimony is legally sufficient to support this verdict, and the judgment rendered thereon. According to the testimony offered on appellee's behalf the parties had, in their oral contract, defined the term *net profits* to appellee as meaning five cents per barrel, less one-half of the interest and commission, and the verdict was for this sum.

It does not appear that the Olsans made any explanation to appellee of the details of their contract with the Penn Oil Company. Appellee was not advised where, from whom, or at what price, the oil had been purchased, nor at what price it had been sold, and, so far as he knew when he agreed to finance the deal, there might have been a profit of more than ten cents per barrel. He was promised, according to the testimony in his behalf, the right to share in a profit of ten cents per barrel, less interest and commission; and while the testimony is conflicting on this issue, the issue is concluded by the verdict of the jury.

The judgment must therefore be affirmed, and it is so ordered.