(No. 26847.—

OTTO SOELZER, Appellant, *vs.* WILHELM SOELZER *et al.*—
(MINNA CUPP, Appellee.)

*Opinion filed March 16, 1943.*

WARNER & WARNER, (HENRY C. WARNER, of counsel,) for appellant.

FREMONT M. KAUFMAN, for appellee.

Mr. JUSTICE MURPHY delivered the opinion of the court:

This appeal involves the title of certain lots located in Franklin Grove, Lee county, which were owned by Bertha Wedemeier at the time of her death. She died intestate leaving no husband or lineal descendants. Plaintiff asks that the real estate be partitioned between his two brothers and certain nieces and nephews, descendants of a deceased brother, as her heirs-at-law. Counterclaimant Minna Cupp asks for specific performance of an alleged contract of adoption which, if sustained, would give her the premises as the sole heir. After a hearing of evidence before the court, a decree was entered as prayed in the counterclaim

and plaintiff's complaint was dismissed for want of equity. Plaintiff has appealed directly to this court.

On May 13, 1891, when counterclaimant was about ten months old she was delivered by the American Educational Aid Association, a foundling institution, to Henry and Bertha Wedemeier, husband and wife. She lived in that home until her marriage in June, 1914. There was no court adoption of her by the Wedemeiers. Her right to the premises as an adopted daughter is founded upon the claim that a written contract dated June 23, 1891, signed by the American Educational Aid Association, but not signed by the Wedemeiers, should be specifically enforced as the contract of Henry and Bertha Wedemeier. Henry Wedemeier predeceased his wife. His estate was disposed of by will and is not involved in the instant case. Reference to him is made solely for the purpose of showing that whatever was done in reference to the child was the united action of both.

The evidence shows that counterclaimant was the daughter of Margaret Monahan and was born about July 4, 1890. Her name was Mary Teresa Monahan. The events which transpired on and prior to June 23, 1891, the date of the contract, are taken from the records of the Aid Association. On May 4, 1891, Margaret Monahan signed and delivered to the Aid Association a statement relinquishing all rights in her daughter and authorizing it to provide the child a home "where she will be loved, trained and educated so as to be fitted for the requirements of life." It contains the request to the association, if it desires, "to secure for my child legal adoption by such person or persons as may be chosen by said association or its authorized agents, without further notice to me." The records further disclose that the Aid Association received her May 4, 1891, and nine days later the Aid Association delivered her to Bertha Wedemeier.

After Bertha Wedemeier's death in 1936, the contract in question was found among her papers. Counterclaimant testified that when she was a girl in the Wedemeier home the contract was kept in a desk with other private papers. The contract is as follows:

"AGREEMENT OF ADOPTION.

THIS AGREEMENT, Made this 23rd day of June, A. D. 1891, at Chicago, in the State of Illinois, between THE AMERICAN EDUCATIONAL AID ASSOCIATION, party of the first part, and Henry Wedemeir and Bertha Wedemeir (his. wife) party of the second part,

WITNESSETH: That, in consideration of the surrender by said first party to said second party, of a certain female child, named Mary Teresa the second party agrees to legally adopt within sixty days, and rear, nurture and support said child tenderly and affectionately, and give it a Christian education.

AND IT IS FURTHER AGREED, That said child shall not be given away to any third party without the written consent and approbation of the party of the first part.

AND IT IS FINALLY AGREED, That, if at any time hereafter, said second party, or either of them, shall fail to legally adopt Mary Teresa care for, support, nurture, or educate said child in the manner and time above agreed, all right of the second party to said child shall at once be at an end, and the first party may at once, at its option, retake her with all her clothing, wherever she may be, whether in this or any other State or Nation.

WITNESS our hands, this 23d day of June A. D. 1891.

JOHN WOODBRIDGE                L.S.
_President._

THOMAS GALT        .
_Secretary._

Recommended by M. V. B. Van Arsdale,
_Gen'l Supt._"

There is evidence showing that in 1891 the Aid Association was using the same form of contract in other cases.

After the child was placed in the Wedemeier home they changed her name to Minna Wedemeier. On April 10, 1893, she was christened under the new name and the baptismal certificate shows that Mr. and Mrs. Wedemeier were witnesses to the ceremony. This certificate was found with the adoption contract and other papers of Bertha Wedemeier.

Henry Wedemeier died in 1909 and after his death counterclaimant continued to live in the home of Bertha Wedemeier until her marriage. Thereafter she lived with her husband in their own home but held affectionate interest in Mrs. Wedemeier and her frequent calls at the home continued until Mrs. Wedemeier's death. Seven persons called as witnesses by counterclaimant testified they had known counterclaimant and Bertha Wedemeier for many years and that counterclaimant was always known as Minna Wedemeier. Some of them stated that Bertha Wedemeier referred to her as being like an own daughter and that counterclaimant called Mrs. Wedemeier "mother." For several months during the latter part of Mrs. Wedemeier's life, counterclaimant attended her, giving her nursing care, doing the housework and other labor in and about the home. One of the witnesses, a relative of Henry Wedemeier by a former marriage, testified that when counterclaimant was a little girl Henry Wedemeier told him that he and his wife had adopted Minna. The evidence of these several witnesses presents a picture of relationship between the counterclaimant and the Wedemeiers similar to that of parent and child.

One other incident should be stated. In 1930 Bertha Wedemeier engaged an attorney to draft her will. According to the evidence of the attorney, the will was duly executed and witnessed. The will could not be located after her death. A copy was introduced in evidence and it shows that Bertha Wedemeier devised certain real estate "to my daughter Bertha Wedemeier Cupp" for life, with remainder "to my grandchildren," naming Mrs. Cupp's children.

To counter the effect of the evidence thus offered by counterclaimant, plaintiff refers to the evidence taken from the files of the Aid Association which shows that March 19, 1900, the association addressed a letter to Henry Wedemeier asking about Mary Teresa Monahan and called attention to the fact that she was being called "Minnie Bertha Wedemeier." It asked if there had been a legal adoption

"Or have you given her the last name? Or have you another girl?" Henry Wedemeier's reply was written on the same page and stated that there had not been a legal adoption, that they had given her the name and "We wish to keep her if she will stay."

The visiting agent of the Aid Association visited at the Wedemeier home in January of each of the years of 1905-1906. In the report of 1905 the agent reported the child did no work, was impudent, lazy, high-tempered and lacked judgment to appreciate the home she had and the things that were being done for her. Her recommendation to the Aid Association was that she be removed from the home. The agent sent the association a letter containing details of her visit to the Wedemeier home, the disciplinary measures that should be given the child and told the association they could send for her at any time. A few days thereafter the association addressed a letter to Mrs. Wedemeier expressing regret of the trouble she was having with the child and that the association would have to take her back. It concluded: "But if it is the only thing to be done, you may return her to us at any time, notifying us when to expect her." The child was never returned, and when the same visiting agent visited the home in January, 1906, she evidently thought conditions had improved, for, although she found the child was impudent, she made no recommendation as to her removal from the home.

Counterclaimant contends that the evidence shows that the Wedemeiers approved and consented to the contract of adoption and that, having enjoyed the benefits of the contract, equity should decree that as done which should have been done and thereby give her the right of inheritance in the property of Bertha Wedemeier. Many of the cases cited by respective counsel involve the establishment of a parol contract to adopt, while in the present case the terms of the contract are written and the question of fact is as to whether the Wedemeiers gave approval to the instru-

ment in question or did some overt act under its provisions so as to make it binding upon them. The law is well settled that, as to contracts generally, a party named in the contract may by his acts and conduct become bound by its provisions even though he has not signed it. (*Broderick v. Driscoll*, 301 Ill. 174; *Memory v. Niepert*, 131 id. 623; *Ames v. Moir*, 130 id. 582.) We perceive no reason why this principle of law should not, where the evidence warrants, be applied to contracts for adoption.

The statement of purposes as contained in the written relinquishment signed by Margaret Monahan May 4, 1891, clearly indicates that she gave her daughter to the association for the purpose of finding a suitable home for her and with the expectation that she would be given for adoption. It is obvious that the purpose of the association in accepting the child was to find a home where she would be given care and attention. That it was expected that such placement would have permanency and be accompanied by adoption is evidenced by the statement in the written relinquishment of Margaret Monahan, wherein she requests that the child be given for adoption and that it be accomplished without notice to her.

As is usual in these cases, death has intervened and deprives us of the evidence of the participants. There is nothing in the record to indicate the motives and purpose of the Wedemeiers for taking the child into their home other than what is found in the consideration clause of the contract. It is there stated that the consideration of surrender of the child to the Wedemeiers was their agreement to legally adopt her within sixty days. The effect of such provision would be to exclude the possibilities of her having been surrendered to them for a test period awaiting the development of their affection and interest in the child. It is evident that as far as the Aid Association was concerned, its understanding was that the child was surrendered to the Wedemeiers in consideration they were

agreeing to adopt her. The terms under which the Aid Association received the child from its mother are corroborative of the conclusion that it was taking her for the purpose of surrendering her custody to persons who would agree to adopt.

The change of the name of the child so soon after she came into the Wedemeier home, the care they gave her, the name by which she addressd Mrs. Wedemeier and the other circumstances surrounding their home life all tend to support the conclusion of fact that the Wedemeiers recognized they had taken her into their home under an agreement to adopt her as their own child.

Plaintiff contends that the letter of March, 1900, sent by the association to Henry Wedemeier indicates that the Wedemeiers never agreed to adopt her. We can not give that letter and the answer to it such construction. It was not an attempt on the part of the association to terminate the contract but was merely an inquiry as to fulfillment. It was not such an inquiry that put Henry Wedemeier in the position where he was required to claim his right under the contract to keep the girl in his home. His answer to such letter and the association's long-continued acquiescence of such explanation are consistent with the existence of an agreement to adopt. There was nothing in the answer to indicate that Henry Wedemeier desired to keep the custody of the child on any terms other than those contained in the contract for adoption.

Appellant urges application of the long-established rule that courts of equity accept with caution, and scrutinize closely, evidence offered in support of a contract to make disposition of property, which, if sustained, disposes of the property of a deceased person different from that allowed by law. The rule is well settled. (*Winkelmann* v. *Winkelmann,* 345 Ill. 566; *Hutton* v. *Busaytis,* 326 id. 453; *Yager* v. *Lyon,* 337 id. 271.) That such principle of law should be applied in the instant case is not ques-

tioned, but the issue to which it is to be applied in this case is more limited than those presented in many of the cases. Here the parties to be bound, the consideration and the terms are definitely fixed by the writing. The chancellor found the Wedemeier's expression of approval was to be found in their overt acts performed under the contract. We agree that a consideration of all the evidence leads to the conclusion that the counterclaimant came into the Wedemeier home upon the consideration that they were to adopt her.

Plaintiff contends that even though there was an agreement to adopt, the evidence fails to show a fulfillment of the contract by counterclaimant. The statement in the report of the visiting agent made in January, 1905, to the effect that the child was impudent, lazy and ill-tempered is relied upon as showing nonfulfillment. It does not appear that the contents of the report were brought to the attention of the Wedemeiers except through the letter of the association to the Wedemeiers under date of January 25. That letter directed them to deliver the child to the association. This was not acted upon and the character of such evidence is not sufficient to overcome the positive and direct evidence of neighbors who observed what counterclaimant did in the home of her adoptive parents both before and after her marriage.

The evidence supports the chancellor's finding that the counterclaimant had fully performed the obligations which rested upon her as the child adopted under the contract in question and that to not enforce the contract would result in an injustice to her.

Finding no reversible error in the record, the decree of the circuit court is affirmed. *Decree affirmed.*