# N. S. STAVROU, INC. AND RELIANCE INSUR-
## ANCE COMPANY *v.* BEACON SUPPLY
## COMPANY, INC., ETC.

[No. 166, September Term, 1967.]

*Decided April 4, 1968.*

452

The cause was argued before HAMMOND, C. J., and HORNEY, BARNES, FINAN and SINGLEY, JJ.

*Leonard B. Sussholz,* with whom was *Thomas R. Brooks* on the brief, for appellants.

*Lance W. Billingsley,* with whom was *Nylen & Gilmore* on the brief, for appellee.

FINAN, J., delivered the opinion of the Court.

A general contractor (N. S. Stavrou, Inc.) and its surety (Reliance Insurance Company) have appealed from judgments in three consolidated cases aggregating $14,059.25 plus interest, entered in favor of a supplier of materials, Beacon Electric Supply Co., Inc. In the court below there was another party defendant, a subcontractor, Densco, Inc., who did not appeal a judgment entered against it on a cross claim by the contractor, whose actions directly affected this litigation.

Early in 1964, Stavrou was awarded prime contracts by the Board of Education of Prince George's County to construct three schools: Tanglewood, Greendale and Taney. Stavrou subcontracted the electrical work to Densco, which procured its materials from Beacon. Beacon was unwilling to directly extend credit to Densco for job materials because it believed Densco to be over-extended, and therefore it requested Stavrou to guarantee payment in advance. As a result of a meeting between officers of Beacon and Stavrou, a written agreement was executed. This agreement, the basis for the litigation, is an undated instrument, executed by Stavrou and signed by Densco, but directed toward Beacon:

"We agree to make payment to the joint order of Densco Inc. and Beacon Electric Supply Corp. monthly for all material supplied by you to Densco Inc. for the Tanglewood Elementary School—$13,000, Greendale Elementary School—$3,000 & Roger B. Taney Jr. High School—$4,000, jobs, total amount not to exceed $20,000.00."

After receipt of this instrument Beacon commenced deliveries of material and between May 13 and August 14, 1964, Stavrou issued 12 checks totalling $19,851, payable jointly to Densco and Beacon. The evidence shows that Stavrou stamped each joint check with the name and address of one of the three schools which were under construction. As a result, according to the job designation on the checks, payments were made as follows:

| | |
|---|---:|
| Greendale: | $ 2,990 |
| Tanglewood: | 13,215 |
| Taney: | 3,646 |
| | $19,851 |

The dispute focuses upon the manner in which Beacon applied the payments which it received from Stavrou. Stavrou argues that the job designation marked on each check was merely for internal bookkeeping purposes, and that Beacon should have applied the checks to the payment for materials delivered to any or all of the three jobs at the time checks were received, with any surplus to be held to apply to the future cost of materials. In support of this contention, Stavrou points to the language in the undated agreement that payment would be "for all material." Stavrou further contends that Beacon must bear the loss for its failure to apply the proceeds of the checks in payment for materials which it supplied since it had it within its power and control to do so.

On the other hand Beacon alleges that it could only legally withhold from the proceeds of the checks that amount due and owing for materials delivered by it to a particular job as of the date covered by the requisition for which the check was issued, and that the checks included payment, not only for materials which it had supplied Densco, but also reimbursement

for Densco's labor expenses. Beacon argues that it could not rightfully withhold any part of the proceeds of the checks which represented Densco's labor cost.

The evidence showed that, as is the custom of the industry, Beacon billed Densco each month for materials supplied from the 25th of the previous month to the 25th of the current month, for each of the three separate school construction accounts. Densco would then submit requisitions to Stavrou, indicating costs for both labor and materials. Beacon's office manager testified, over objection, that the checks issued by Stavrou tied in to these requisitions of Densco's, which included both material and labor charges. As a result, when Beacon received a check for $846 on June 15, 1964, for example, it would note that the check was marked "Roger Taney Jr. High School," would apply the check to the amount due Beacon for materials supplied on the Taney contract as of the last requisition date, and would then turn over any cash balance on the check to Densco so the latter could pay its employees. Following this procedure Beacon contends that of the $19,851 paid to it by checks from Stavrou, only $4,818.46 was for materials covered by the requisitions submitted to it. Since the cost of materials for the completed jobs totaled $18,877.62, Beacon argues that $14,059.16 is still due.

This Court is of the opinion that the checks were issued for payment only on the designated jobs, and that both labor and materials were included in the requisitions covered by the checks. Clearly, both Stavrou and Beacon understood Densco's credit to be questionable, and this fact prompted the written agreement. Although the terms of the writing impose upon Stavrou the duty to make payment for *materials* not to exceed $20,000, Stavrou's conduct had the effect of exceeding the obligation undertaken by the writing.

On July 9, for example, Stavrou issued three joint checks, one designated "Taney," one "Greendale" and the third "Tanglewood." Certainly, if appellant Stavrou expected the checks to be applied indiscriminately to materials owed on all three jobs, there would be no reason to draw three checks on the same day. Similarly, Stavrou issued two checks on June 15, one designated "Greendale" and the other, "Taney." We must conclude

that Stavrou paid on individual requisitions which included both labor and materials expenses separately listed.

This conclusion is not necessarily inconsistent with the terms of the undated "agreement." It should be noted that the instrument lists the material cost per job based on Beacon's prior price quotations, with the total of $20,000 which Stavrou set as the upper limit of its agreement regarding materials. Since no mention was made of labor costs, it can be argued that when Stavrou received the monthly requisitions covering both material and labor, it combined both payments in the joint check rather than write one to Beacon for materials and another to Densco for labor. In other words, the fact that the agreement remained silent on the subject of labor expenses does not demand the conclusion that Stavrou intended the check to be in satisfaction of materials alone. As further support for this conclusion we note first, that each joint check satisfied the previous requisition which included material and labor, and second, that during the period of these payments Stavrou made no direct payments to Densco for the latter's labor expenses.

In evaluating Stavrou's contentions we cannot overlook the fact that Stavrou was acutely aware of Densco's precarious financial condition and that the company was struggling to maintain solvency. Such being the condition, how then, if we accept Stavrou's interpretation of the undated agreement, could Stavrou have reasonably expected Densco to survive from April 9, 1964, the date of the first billing, to September 23, 1964, the date of the last billing, a period in excess of 5 months, if Densco was not to receive any reimbursement for money expended on labor? How was Densco to keep its work force intact and meet its operating expenses? The answer is inherent in the problem which gave rise to the original agreement whereby funds covering the requisitions made by Densco on Stavrou were to be funneled through Beacon's hands. We think the logical answer is that Densco being overextended, Beacon was first to be paid for materials covered by the requisition and then it was essential that remaining funds pass to Densco for its expenses.

Both parties presented arguments concerning the validity of the undated agreement, whereby Stavrou was to make its checks payable to joint payees, and the proper interpretation thereof.

If the undated agreement was not a binding contract on Beacon, who never signed it, then Stavrou would not have the semblance of any legal redress against Beacon. However, assuming for the purpose of this opinion that it is a binding contract, and we think that it is, the question of its enforceability becomes academic, because under the interpretation we place upon it, in either event Stavrou's position is untenable.

The court below found that there was a valid contract binding Stavrou, Beacon and Densco to an agreed method of payment. Beacon unquestionably received a benefit from this arrangement and at least had the obligation, after first deducting for its materials, to account to Densco for the balance of the proceeds from the checks on which they appeared as joint payees.

In *NLRB v. Local 825, Int'l Union of Operating Engineers,* 315 F. 2d 695, 699 (3d Cir. 1966) the Court stated:

> "That the union failed to sign the agreement is immaterial for any written contract though signed only by one of the parties binds the other if he accepts it and both act in reliance on it as a valid contract."

1 Williston, *Contracts* § 90A, p. 292 (3d ed. 1957) ; 1 Corbin, *Contracts* § 31, p. 117 (1963 ed.).

However, we do not think under any circumstances that this agreement was intended as a guarantee of payment in lieu of Stavrou's obligation as the general contractor under its bond required by Code, Art. 90 § 11 (1964 Repl. Vol.).

Nor do we, nor did the lower court, read into the agreement any obligation, or authorization, on the part of Beacon to retain proceeds from any check in excess of the cost of materials it supplied as per the requisition for which the check was issued. In *Dickerson Lumber Company, Inc. v. Herson,* 230 Md. 487, 493, 187 A. 2d 689, 692 (1963) we said:

> "* * * we do not think that the Lumber Company was in a position in effect to enforce a lien thereon for future indebtedness to it to be incurred by Marson for materials to be used in the Herson job. * * *. *We think that the rule works both ways and that a*

*hold-back for the future supplies to be furnished by a particular materialman was not contemplated either."* (Emphasis supplied.)

Appellant further argues that Beacon's acceptance of checks in greater amount than presently due under each contract without so informing Stavrou, misled Stavrou to its detriment, and is therefore sufficient to estop Beacon from claiming under the payment bond.

In certain situations, this Court has recognized that a materialman or supplier may be estopped from asserting a lien against the contractor, owner or surety. In *Crane Co. v. Onley,* 194 Md. 43, 69 A. 2d 903 (1949), relied on by the appellants, the owner called the supplier for a delivery and asked if he should pay the supplier directly. The supplier declined, stating that it had an account with the contractor and the owner should pay the contractor. Relying on this representation in good faith, the owner paid the contractor who failed to pay the supplier. Under these facts, the Court was satisfied that the supplier's assurance was sufficient to raise an estoppel. On the other hand, a supplier was not estopped from asserting a lien where the facts presented a case of negligence on the part of the owner in relying upon the supplier's representations that the contractor was reliable and a completion bond was unnecessary. See *Johnson Lumber Co. v. Magruder,* 218 Md. 440, 147 A. 2d 208 (1958).

Perhaps the case which comes closest to the instant case is the already cited *Dickerson Lumber Co., Inc. v. Herson, supra.* There, the construction money lender made progress payments by check payable to owner and supplier jointly. Both would endorse the checks over to the contractor for deposit, after which the contractor would draw on these deposits in favor of the supplier, who then applied the payments to debts owed by the contractor on other jobs, rather than on the contract with the owner. The lower court found that the supplier, in fact, knew that the source of the contractor's funds was the periodic payments then being made under the construction loan of the owner. The Court of Appeals affirmed that part of the decision which estopped the supplier from asserting a lien on what was

due and owing on the owner's job at the time it applied payments to other debts of the contractor stating:

> "We think that it was clearly the duty of the Lumber Company and of its officers to apply funds received by the Lumber Company from Marson [Contractor] known to have been derived from the Herson [Owner] payments to the payment of charges against the Herson job *then due* rather than to apply such amounts to the payment of other indebtedness of Marson to the Lumber Company. To the extent of such indebtedness we think it clear that the Lumber Company is estopped to assert a lien against the Hersons' property." (Emphasis supplied.) 230 Md. at 492, 187 A. 2d at 692.

*Dickerson* certainly is authority for the application of the principle urged upon the Court by the appellee, namely, that the duty of the supplier was to apply all funds derived from the contractor to payment of charges against the job "then due" rather than to apply such payments to other accounts. The appellants, like the appellee, also seek to take sustenance from *Dickerson,* while at the same time distinguishing it factually from the case at bar. Obviously, the two cases are distinguishable on a factual basis; however, the principle enunciated by *Dickerson,* that the supplier may not hold the funds represented by a check of which he is a joint payee for application to future costs of materials, and may only apply the proceeds to the extent of the debt then due, is certainly apposite.

We are sympathetic with the position of the general contractor Stavrou, in that it may have painted itself into a corner by endeavoring to cooperate with the materialman in the latter's effort to protect itself. However, as the lower court pointed out in its opinion, Stavrou could have protected itself by the simple expedient of having Beacon (the materialman), in return for Stavrou's cooperation in entering into the joint check agreement, execute a waiver of its right to remedy under the general contractor's bond required by Code. Art. 90 § 11 (1964 Repl. Vol.), but this was not done. In order for Stavrou, as the general contractor, to be successful in this suit it would had

to have shown by a fair preponderance of the evidence an express or implied waiver on the part of Beacon of its statutory rights under Art. 90 § 11. The lower court failed to find proof of any such express or implied waiver on the part of Beacon. We agree with the lower court's decision.

*Judgments affirmed with costs.*