ANTIETAM-SHARPSBURG MUSEUM, INC. *v.*
WILLIAM H. MARSH, INC.

[No. 94, September Term, 1968.]

*Decided February 4, 1969.*

The cause was argued before HAMMOND, C. J., and McWIL-LIAMS, FINAN, SINGLEY and SMITH, JJ.

*William J. Dwyer* for appellant.
No brief filed for appellee.

McWILLIAMS, J., delivered the opinion of the Court.

We shall be concerned here with an erstwhile landlord's right to collect from his former tenant unpaid rent which accrued prior to the transfer of title to the purchaser. It may all seem somewhat frivolous when one reflects that 106 years ago the possession of the demised premises was disputed by over 100,000 men, 20,000 of whom enriched its soil with their blood.

In 1962 appellant (the Museum) was the owner of the 200 acre "Piper Farm" which lies within the Antietam-Sharpsburg battlefield and through a part of which runs the "Sunken Road," sometimes called "Bloody Lane." In January 1962 the Museum leased the farm to appellee (Marsh) on a month to month basis. In September of 1963 the Museum entered into some kind of an arrangement with the United States. In the testimony it was said, in one place, to be a 60 day option to purchase. In another place it was said to be a contract of sale. Although a copy of the document was admitted in evidence it is not in the tran-

script of the record. Whatever it may have been, Marsh, for reasons undisclosed, thereafter stopped paying the monthly rent. On 30 June 1964 the Museum executed and delivered to the United States a deed to the "Piper Farm." Marsh at that time owed 8 months rent which he refused to pay and to recover which the Museum, on 14 March 1966, filed suit in the Circuit Court for Washington County. The case was tried before Rutledge, J., without a jury, on 9 February 1968. At the conclusion of the Museum's case Marsh's "motion for a directed verdict" was granted. Once again [1] we remind both bench and bar that the motion for a directed verdict, in these circumstances, is improper. Maryland Rule 535. Judge Rutledge did not give his reasons for directing the verdict nor did the Museum move to require him to do so. Rule 18 c. There was no appearance for Marsh in this Court.

It seems to us to be beyond dispute that rent belongs to the person who owns the property on the day it becomes due. *Wise v. Pfaff,* 98 Md. 576, 56 A. 815 (1904); *Outtoun v. Dulin,* 72 Md. 536, 20 A. 134 (1890); *Martin v. Martin,* 7 Md. 368 (1855); II American Law of Property §§ 9.44 and 9.45 (1952); 52 C.J.S. *Landlord and Tenant* § 516 (1968). When there is a transfer of title unpaid accrued rent, unless otherwise provided for, belongs to the person who was the landlord at the time of accrual. Likewise current rent is not apportionable, unless by agreement, when the transfer occurs during the rent period. *Fahrenbraker v. E. Clemens Horst Co.,* 209 Cal. 7, 284 P. 905 (1930); *Velishka v. Laurendeau,* 100 N.H. 46, 118 A.2d 600 (1955); 52 C.J.S. *Landlord and Tenant* § 516, *supra.* There was, we think, evidence sufficient to support a finding that Marsh was a month to month tenant of the Museum during all of 1963 and up to and including June 1964. Since the "option—contract of sale" is not in the transcript of the record there is no occasion for us to consider what effect, if any, it may have had upon the Museum's right to the accrued rent. In any case there is nothing in the surprisingly scanty testimony to suggest that the United States claims any part of it.

---

1. *Lewis v. Germantown Ins. Co.,* 251 Md. 535, 248 A. 2d 468 (1968) and cases cited therein.

In view of the familiar requirement that the evidence, together with all proper and legitimate inferences to be drawn therefrom, must be considered in a light most favorable to the Museum we cannot understand why, on this record, the learned trial judge directed a verdict for Marsh.

*Remanded for further proceedings without affirmance or reversal. Costs to abide the final result.*