## SNIDER BROS., INC. *v.* HEFT ET AL.

[No. 126, September Term, 1973.]

*Decided April 15, 1974.*

The cause was argued on December 6, 1973, before BARNES, McWILLIAMS, SINGLEY, SMITH and DIGGES, JJ., and reargued on January 25, 1974. before MURPHY, C. J., and

SINGLEY, SMITH, DIGGES and ELDRIDGE, JJ., and JAMES C. MORTON, JR., and RICHARD P. GILBERT, Associate Judges of the Court of Special Appeals, specially assigned.

*Paul H. Mannes,* with whom were *Stanley Klavan, Kaye T. Brooks* and *Mark P. Friedlander* on the brief, for appellant.

*Leonard W. Burka* for appellees.

ELDRIDGE, J., delivered the opinion of the Court.

The dispute in this case concerns a real estate broker's entitlement to commissions for procuring leases for a shopping center.

Michael Stein and Arnold A. Heft owned two adjoining tracts of land in Fairfax County, Virginia, on which they intended to erect a shopping center. Sylvia Heft, Arnold Heft's wife, may also have had an ownership interest in the land, although this is not clear from the record. In order to obtain tenants for the proposed shopping center, Stein and Arnold Heft on September 13, 1967, entered into a written agreement with Snider Bros., Inc., a real estate broker. There was also a place on the agreement for Sylvia Heft to sign, with her name typed underneath, but she did not in fact sign the agreement. Under the agreement, Snider Bros. was given the exclusive right, for a period of twelve months, to obtain lessees upon terms and rentals approved by Stein and Heft. The agreement provided that " [i]f during the term of this agency any part or portions of the proposed shopping center are leased . . . ," Stein and Heft would pay Snider Bros. "a leasing commission of 5% of the gross rental payable as collected" by Stein and Heft for the length of the lease. The agreement also provided that this leasing commission would be paid for certain leases already procured by Snider Bros. under a pre-existing oral agreement. Finally, the agreement stated that " [i]n the event of an actual sale" of the property, Stein and Heft "shall have the right to 'buy out' Snider Bros., Inc., right to commissions for a cash payment at the time of settlement"

of "2-1/2% of the Minimum Guaranteed Annual Rent ... multiplied by the number of years remaining of the initial term of the lease, for each lease signed at time of settlement of the property."

After the September 13, 1967, agreement, Snider Bros. obtained several additional prospective tenants who entered into leases with Stein and Arnold Heft. One of these leases was also signed by Sylvia Heft. On October 17, 1968, Snider Bros., Michael Stein, Arnold Heft and Sylvia Heft signed another contract relating to Snider Bros.' brokerage commissions. In this contract the broker agreed to waive its right to commissions under the September 13, 1967, contract "on the condition that you [Stein and the Hefts] agree ... that we shall be paid the sum of Thirty-Five Thousand ($35,000.00) Dollars in consideration of the services rendered . . . ." The October 17th contract went on to provide that if the $35,000.00 were not paid within one year from the date of the contract, all of Snider Bros.' rights under the agreement of September 13, 1967, would be in "full force and effect and shall be binding . . . ." The $35,000.00 was never paid, and therefore Snider Bros.' "rights" under the contract of September 13, 1967, remained in "full force and effect and . . . binding."

Stein and the Hefts encountered financial difficulties in connection with building the shopping center on the two tracts of land, and they were never able to begin actual construction. In September 1969, one of the two tracts was sold at a foreclosure sale. Being in danger of similarly losing the other tract, Stein and the Hefts in November 1969 sold it to a Mr. Comparato. Under the terms of the sale, Comparato did not pay Stein and the Hefts any cash, but he did assume the balances due under several trusts on the land. He also received from Stein and the Hefts an assignment of whatever interest they had in the leases procured by Snider Bros.

The shopping center was thereafter built on the two tracts, and some of the lessees originally obtained by Snider Bros. became tenants of the center. Snider Bros., receiving no brokerage commissions from anyone, first filed an action

against Comparato in Virginia. That suit being unsuccessful, Snider Bros. then brought the present action against Stein, Arnold Heft and Sylvia Heft in the Circuit Court for Montgomery County, Maryland. The suit was for commissions claimed to be due under the September 13, 1967, agreement. Other parties, who were investors in the proposed shopping center, were also initially named as defendants, but the actions against them were later dismissed.[1]

The action below was tried by the court without a jury, and the plaintiff Snider Bros. presented testimony as well as documentary evidence in an effort to prove its entitlement to brokerage commissions under the September 13, 1967, agreement. At the close of the plaintiff's case, counsel for the defendants made two motions to dismiss under Maryland Rule 535. The first was to dismiss as to the defendant Sylvia Heft, on the ground that she did not sign the September 13, 1967, agreement and therefore was not bound by its terms. The second motion was to dismiss as to the remaining defendants, Stein and Arnold Heft, on the ground that they were not liable for brokerage commissions under the language of the September 13th agreement. After oral argument, the trial judge granted both motions, and judgment was entered for the defendants. On this appeal, the plaintiff challenges the rulings on both motions to dismiss.

As we have stated many times, before a trial judge can properly grant a motion to dismiss under Rule 535, he must view the evidence and the inferences therefrom in a light

---

1. The record in this case shows that the land was in Virginia, that Snider Bros.' office was in the District of Columbia, and that Stein and the Hefts resided in Maryland. The September 13, 1967, agreement, signed by Snider Bros., Stein and Arnold Heft, was in the form of a letter sent by Stein and Heft to Snider Bros. at the latter's office in the District of Columbia. The record is silent as to where the last act was performed which made the September 13th agreement a binding contract, and the parties have raised no question concerning this matter. Under these circumstances, we apply Maryland law. Coppage v. Resolute Ins. Co., 264 Md. 261, 269, 285 A. 2d 626 (1972); The Maccabees v. Lipps, 182 Md. 190, 195-96, 34 A. 2d 424 (1943); Prudential Ins. Co. v. Shumaker, 178 Md. 189, 195-98, 12 A. 2d 618 (1940); Universal Credit Co. v. Marks, 164 Md. 130, 142, 163 A. 810 (1933).

most favorable to the plaintiff and then be able to determine that the plaintiff has failed to present a prima facie case. *Davis Adv. Serv. v. Executive Staffing*, 264 Md. 644, 645, 288 A. 2d 148 (1972); *Isen v. Phoenix Assurance Co.*, 259 Md. 564, 571, 270 A. 2d 476 (1970); *Antietam-Sharpsburg v. Marsh*, 252 Md. 265, 267-68, 249 A. 2d 721 (1969); *Price v. Levin*, 248 Md. 158, 159-60, 235 A. 2d 547 (1967); *Allen v. Steinberg*, 244 Md. 119, 122, 223 A. 2d 240 (1966). In light of this standard, both motions to dismiss should have been denied.

## I.

The motion to dismiss as to Sylvia Heft was based on the fact that she did not sign the September 13, 1967, agreement with the broker Snider Bros., Inc. Normally a person cannot be held liable under a contract to which he was not a party. *Crane Etc. Co. v. Terminal Etc. Co.*, 147 Md. 588, 593, 128 A. 280 (1925). However, a person not originally a party to a contract may later accept or adopt it, and he will then be bound by it. *N. S. Stavrou, Inc. v. Beacon Elec. Supply*, 249 Md. 451, 456, 240 A. 2d 278 (1968); *Magna Pipe Line Co. v. Ober*, 180 Ark. 1036, 24 S.W.2d 879 (1930); *Soelzer v. Soelzer*, 382 Ill. 393, 47 N.E.2d 458 (1943); *Gladden v. Keistler*, 141 S. C. 524, 140 S. E. 161 (1927); *Chavez v. Goodman*, 152 S.W.2d 826 (Tex. Civ. App. 1941); *Norton & Lamphere Const. Co. v. Blow & Cote, Inc.*, 123 Vt. 130, 183 A. 2d 230 (1962); 1 Williston, *Contracts* § 90A (3d ed. 1957); 17 C.J.S. *Contracts* § 62c; 17A C.J.S. *Contracts* § 520.

There was sufficient evidence that Sylvia Heft adopted or assented to the September 13, 1967, agreement to have precluded granting a motion to dismiss. She signed one of the leases which Snider Bros. procured pursuant to the September 13th agreement. More significantly, she signed the October 17, 1968, contract whereby she promised to pay the broker $35,000.00 in lieu of the commissions due under the 1967 contract. She went on to agree in the October 1968 contract that if the $35,000.00 were not paid within one year, the broker's rights under the September 1967 contract "shall be binding upon" her. This would appear to be an express adoption of the earlier contract.

Sylvia Heft argues, however, that she received no benefit from the transaction and that, therefore, there was no consideration for her promise in October 1968 to be bound by the September 1967 contract. Assuming, *arguendo*, that she received no benefit from the transaction and that there had to be independent consideration in October 1968 for her promise to be bound by the earlier contract, such consideration was present. The consideration was Snider Bros.' agreement in October 1968 to accept a lesser amount of money for the same services. Even though an agreement involves no benefit to the promisor, consideration still exists if the promisee agrees to incur a detriment or disadvantage. *Powder Company v. Campbell*, 156 Md. 346, 365, 144 A. 510 (1929); *Devecmon v. Shaw*, 69 Md. 199, 14 A. 464 (1888); *Hartle v. Stahl*, 27 Md. 157, 173 (1867); 1 Corbin, *Contracts* § 122 (1963 ed.); 1 Williston, *Contracts* §§ 102, 102A (3d ed. 1957).

## II.

Turning to the matter of the broker's entitlement to commissions for the leases it procured, the arguments in the briefs and before us to some extent concerned the application of Maryland Code (1973 Repl. Vol.), Art. 21, § 14-105.[2] That section provides (emphasis supplied):

> "Whenever, *in the absence of special agreement to the contrary*, a real estate broker employed to sell, buy, lease or otherwise negotiate real or leasehold estates or mortgages, or loans thereon, procures in good faith a purchaser, seller, lessor or lessee, mortgagor or mortgagee, borrower or lender, as the case may be, and the person so procured is accepted as such by the employer, and enters into a valid, binding and enforceable written contract of sale, purchase, lease, mortgage, loan or other contract, as the case may be, in terms acceptable to the employer, and such contract is

2. Formerly Code (1957), Art. 2, § 17.

accepted by the employer and signed by him, the broker shall be deemed to have earned the customary or agreed commission, as the case may be, whether or not the contract entered into be actually performed, unless the performance of such contract be prevented, hindered or delayed by any act of the broker."

The above-quoted statute was designed "to settle the question when, in the absence of special agreement, a real estate broker is entitled to commissions." *Ricker v. Abrams,* 263 Md. 509, 517, 283 A. 2d 583 (1971); *Sanders v. Devereux,* 231 Md. 224, 231, 189 A. 2d 604 (1963); *Brown v. Hogan,* 138 Md. 257, 268, 113 A. 756 (1921). If there is no agreement between the parties as to when the broker's right to commissions comes into being, the statutory provisions control. *Manning-Shaw v. McConnell,* 244 Md. 579, 583, 224 A. 2d 445 (1966); *Althouse v. Watson,* 143 Md. 650, 655, 123 A. 47 (1923); *Brown v. Hogan, supra,* 138 Md. at 268-69; *North Ave. Casino Co. v. Ferguson,* 130 Md. 376, 381, 100 A. 628 (1917). But, under the plain language of the statute, where the parties enter into an agreement as to when the right to brokerage commissions accrues, the agreement is controlling. The issue then becomes the parties' intent under that agreement. *Goss v. Hill,* 219 Md. 304, 307-308, 149 A. 2d 10 (1959); *Chasanow v. Willcox,* 220 Md. 171, 176, 151 A. 2d 748 (1959); *Prince George's Club v. Carr,* 235 Md. 591, 603, 202 A. 2d 354 (1964). In the case before us, the September 13, 1967, contract contained provisions as to when Snider Bros. would be entitled to commissions. The statute, therefore, has no application. The question is what did the parties intend.

The provisions concerning commissions in the September 13, 1967, agreement are as follows:

"If during the term of this agency any part or portions of the proposed shopping center are leased by us [Stein and Heft], or you [Snider Bros.], or anyone else, directly or indirectly, at the terms and rentals approved by us, we shall pay you a leasing

commission of 5% of the gross rental (including overage payments and common area charges but excluding real estate tax increases) payable as collected by us [Stein and Heft] or our agent for the length of the lease including any option periods exercised by Tenant.

\* \* \*

"In the event of an actual sale of the subject property, the Owners shall have the right to 'buy out' Snider Bros., Inc., right to commissions for a cash payment at time of settlement, the amount of said payment to be computed as follows: 2-1/2% of the Minimum Guaranteed Annual Rent (including common area charges) multiplied by the number of years remaining of the initial term of the lease, for each lease signed at time of settlement of the property."

Keeping in mind that the above-quoted language, including all reasonable inferences therefrom, must be viewed in a light most favorable to the plaintiff Snider Bros., we believe that these provisions were sufficient to have required a denial of the motion to dismiss.

Stein and Heft agreed to pay the brokerage commissions " [i]f . . . any part or portions of the proposed shopping center are leased . . . ." This would indicate that the right to a commission accrued upon the execution of a lease. The agreement went on to contain the "buy-out" clause, providing for a "cash payment," based on 2-1/2% of the rent rather than 5%, to the broker by the owners " [i]n the event of an actual sale of the subject property." One tract was sold at a foreclosure sale and the other was sold by the owners. Since the language of the agreement did not qualify the word "sale" in a manner that would exclude the type of sales here, it would seem that commissions at the lesser percentage became due when the two sales occurred, thereby supplanting the broker's right to commissions at the higher percentage.

Stein and Heft rely, as did the trial judge, on the phrase in

the agreement "payable as collected" following their promise to "pay you a leasing commission of 5% of the gross rental." This phrase, they claim, conditioned the promise to pay commissions upon rent being actually collected. They cite in support of their argument *Prince George's Club v. Carr, supra,* 235 Md. at 605, where language was construed as creating a condition which had to be met before the right to commissions accrued. *See also Chasanow v. Willcox, supra,* 220 Md. at 174. In *Prince George's Club v. Carr,* the language was that the commission would be paid "at the time of settlement ... from the sale proceeds." In *Chasanow v. Willcox,* the language was that the commission was to be deducted "from the proceeds of the sale." The agreement in *Carr,* as well as the agreement in *Chasanow,* specified a particular fund, consisting of the sale proceeds, which had to come into being before there could be a right to a commission. The commission was payable only from that fund. In the present case, however, the parties did not expressly agree that the commissions were payable "from the rent proceeds." The language used, "payable as collected," is not quite as clear. The language may have been intended merely to indicate the times for payment of commission money instead of when the right to commissions accrued. Such an interpretation is supported by the so-called "buy-out" provision. This provision gave the property owners "the right to 'buy out' Snider Bros., Inc.['s] *right* to commissions" (emphasis supplied) in the event of a sale. By referring to the broker's "right" to commissions if the property were sold instead of rented, the parties seemed to have intended a right to commissions independent of the collection of rental proceeds. Thus, it is not at all clear that the right to commissions under the agreement was conditioned upon the owners actually collecting rent.

We do not suggest that the language of the September 13, 1967, contract, standing alone, is so clear that the trial judge after a full trial would be compelled to conclude that the broker clearly proved his entitlement to commissions. It is only because of the standard which must be employed in determining whether a motion to dismiss should be granted,

*i.e.*, viewing the evidence and inferences therefrom in a light most favorable to the plaintiff, that brings us to the conclusion that the plaintiff made out a prima facie case. On the other hand, our recent statement in *Missler v. Anne Arundel County*, 271 Md. 70, 80, 314 A. 2d 451 (1974), would appear to fit the present case also. Judge Digges there said for the Court:

> "When, as we think exists in this case, doubt arises from the writing itself as to what the parties meant by the language employed, extraneous evidence of what the words and actions of the parties would reasonably induce another to believe was intended may be admitted to assist the court in determining what was in fact agreed to by the parties. *Allen v. Steinberg*, 244 Md. 119, 127, 223 A. 2d 240 (1966); *McKeever v. Realty Corp.*, 183 Md. 216, 37 A. 2d 305 (1944)."

For the reasons set forth, we conclude that both motions to dismiss should have been denied.

> *Judgment reversed, and case remanded for a new trial.*
> *Appellees to pay costs.*